1  Ryan A. Nassbridges "PRO SE"
2  Bita J. Nassbridges "PRO SE"
   30025 Alicia Parkway Suite 219
3  Laguna Niguel, CA 92577
   Email: Rnassbridges@Gmail.com
4



5

6              UNITED STATES DISTRICT COURT

7              CENTRAL DISTRICT OF CALIFORNIA

8                     SANTA ANA DIVISION

9

10                                              Case No.

11  U.S. Commodities and Futures Trade Commission   SACV10-01876 DOC (RNBx)
    CFTC
12                                              **DEFENDANTS'**
              Plaintiff,
13
    V.                                          **OPPOSITION IN SUPPORT OF**
14                                              **DEFENDANT'S** RESPONSE TO
    RYAN NASSBRIDGES                            PLAINTIFF FOR MOTION FOR
15  AMERICAN BULLION EXCHANGE ABEX              SUMMARY JUDGMENT
    CORP. AMERICAN BULLION EXCHANGE
16  LLC.
              Defendant.                        Honorable Judge Carter
17                                              Courtroom 9d
    R.E.LLOYD COMMODITIES GROUP                 Hearing Date: July 14, 2014
18  HOLDINGS LLC. AMERICAN PREFERRED            Time: 8:30 am
    COMMODITIES APC CORP. BITA
19  NASSBRIDGES
                                                Exhibits is support thereof
20            Relief-Defendants
21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA SANTA ANA DIVISION HONORABLE JUDGE DAVID O. CARTER: Now comes Defendant, R. Nassbridges ("the Defendant") to the honorable court, in pro per sona, and Bita Nassbridges (the RELIF-defendant") hereby files defendants' "OPPOSITION" against the Plaintiff's Counsel for Motion for Summary Judgment

### **PROCEDURAL HISTORY**

On December 08, 2010 U.S. CFTC "the Plaintiff" filed an Injunction for Relief under Commodity Exchange Act, as Amended 7 U.S.C. §1 et seq. (2006) and commission Regulations, 17 C.F.R. §1.1 et seq. (2007) for Civil Monetary and Ancillary Equitable Relief herein.

On November 10, 2011 defendants filed this motion for summary judgment Pursuant to Fed. R. Civ. P. 56, and for the reasons set forth in the attached Memorandum, defendants hereby move this Court for the entry of summary judgment.

Since January 2012 Plaintiff has filed numerous requests for extensions and demanded extra time to respond to defendants' motion for summary judgment.

On or about June 20, 2012 pursuant to Fed.R.Civ.P. 26(f) and Local Rule 26-1, parties in this matter filed their joint status report.

On or about August 09, 2012 due to "numerous" requests for extensions by Plaintiff's Counsel for time to produce certain materials and respond to "Defendants Motion for Summary Judgment" the court granted one final time to extend the hearing date on defendants Motion for Summary Judgment against the plaintiff. (Doc # 166)

On November 07, 2012 Denied Plaintiff's Request to STAY this matter so can negotiate a settlement, "plaintiff's Counsel" [affirmed] that plaintiff's responses and productions of documents to the defendants are still pending. (Doc # 177)

On November 15, 2012 Plaintiff's counsel suddenly claims that it has miscalculated the dates to respond to defendants' motion for summary Judgment Doc # 91, #93, #96, #97, # 99 and Doc # 100, and as such has filed a motion for leave to file responses "Out of time." (Doc #179)

On November 16, 2012 Defendants' submitted their opposition to plaintiff's motion for leave seeking for more time as improper, in ["contravenes"] to policy rules for enlargement of time and Court's ORDER on August 09, 2012 that warned the parties that no more extensions after three hundred fifty five ("355") days delay will be granted and parties are to meet deadlines in compliance with Federal Rules of Civil Procedures. ("Doc # 166")

On or about November 21, 2012 the court graciously allowed plaintiff's counsel to file his late responses that seems to have influenced the ORDER denying defendant's Motion for Summary Judgment NOT on the bases of the Movant's argument but on the basis of the responses, as such plaintiff late responses prejudiced the defendant and relief defendant. And therefore on November 22, 2012 the defendant and relief defendant filed their formal objection.

> As such because Plaintiff was "Granted" "Numerous over and over the opportunity over "355" days delays to file late responses influenced defendant's Motion for Summary Judgment NOT only plaintiff's counsel "**late responses** ["prejudiced"] the defendant and relief defendant, while on that ground alone the defendant's Motion for Summary Judgment should have been granted and assumed as FACTS.

On December 03, 2012 at the hearing, the honorable court Judge instructed the defendant and relief defendant to file their Brief by Friday December 07, 2012.

On December 07, 2012 the defendant and relief defendant filed their brief.

On October 17, 2013 the court denied defendant's Motion for Summary Judgment.

On November 01, 2013, defendant filed his "Motion for Reconsideration".

On "Both" "Motions" the Court without citing and ruling on the cited laws and evidence, emphasized that this matter "MUST" be decided by a Jury Trial, and therefore "denied" defendants Motion for Summary Judgment" that was admitted by default.

On initial Joint status conference report filed in May of 2012, and the subsequent "unilateral" filed by Plaintiff in January 2014, Trial dates were set for September. And NO leave for plaintiff counsel to file a last minute "counter" motion for Summary Judgment against the defendants was ever stipulated or granted.

1   FURTHERMORE, on "TWO" separate ORDERS the court has already RULED that this

2   matter "must be decided by a Trial by Jury" and was the reason the court didn't rule on the

3   substance of the motions against the plaintiff but being fair. NOW this motion by plaintiff is

4   against every prior arrangements and understandings in this matter.

5       Now respectfully comes Defendant, R. Nassbridges ("the Defendant") to the honorable court,

6   in pro per sona, and Bita Nassbridges (the RELIF-defendant") hereby submits defendants'

7   "OPPOSITION" against the Plaintiff's Counsel for Motion for Summary Judgment, asking the

8   court to assure a fair chance of trial under federal rules of civil procedures as follows:

9                    OPENING STATEMENT AND CONCLUSION OF LAW

10  (i)  The Motion for Summary Judgment is NOT proper because.

11

12      (a) Pursuant to parties Joint Status Conference in compliance with Rule 26, the parties

13          never discussed nor agreed Plaintiff pursuing a "Motion for Summary Judgment",

14          to the contrary the Plaintiff defaulted to respond to defendant's "Motion for

15          Summary Judgment"

16      (b) The Court's prior orders in this matter "emphasized" that this matter cannot be

17          decided in a "Motion for Summary Judgment" as such the Court "order" was that

18          because it MUST be decided by jury TRIAL, the court did not respond or review

19          the defendants arguments "conclusions of Law" and Act of congress. (*Please see*

20          *court's Order denying "defendant's" motion for summary judgment V Plaintiff*).

21  (ii)  By the "Court's" own ruling and Federal rules of civil procedures "A" decision cannot

22      be made by "a" motion for summary Judgment IF the FACTS are disputed, and cannot

23      be simply based on the citations or allegations made by the plaintiff, that prejudices the

24      defendants'. (*Please see court's own Order denying defendant's motion for summary*

25      *judgment V Plaintiff*).

26

27      The Plaintiff cannot simply seek "Motion for Summary Judgment" and argue its

28      "assembled exhibits" and its own allegations as uncontroverted facts as it is improper,

especially where each and every allegation is "disputed" with "supporting evidence" by the "testimonials" of Officers of the courts who argue the allegations as **GROSS misrepresentations of facts.** (*"Please see exhibits attached hereto"*)

(iii)   Motions for Summary Judgments are improper **when pleadings** are close to TRIAL to delay the trial, a party cannot move on the [same] pleadings, Federal rules of Civil Procedures 60 doesn't allow a moving party to bring matters that are <u>disputed</u> and element or evidence of "misrepresentation of material facts" exist.

**e.g.** The General counsel for the Bankruptcy estate and the Court's appointed Trustees (most honorable counsels in the community) <u>**who are NO friends of the defendants**</u>, and to the contrary had a fiduciary duty to discover misconducts, misappropriation of FUNDS, and or profit of money by the debtors executives, "TESTIFIED" that after conducting 3 years of investigations found NO misconducts, misappropriation of FUNDS, and or profit of money by the debtors executives ("the defendants and Relief-defendants hereto collectively") and TESTIFY that the 523 order that as part of abuse of process used by the plaintiff's counsel here was unjust because (a) the defendant was in pro se. (b) at the time evidence of MF Global Fraud did NOT exist. **(See exhibit "A" and "B" &The CD ROM Exhibits # 2& # 3 Page 7 thru Page 321,& P.735)**

(iv)   **Neither a "Leave of Court was sought" nor the court had relieved the Plaintiff or its legal representative to proceed** with a motion for summary Judgment, AFTER a Trial date was set and was calendared at the in persons final status report before the court in February of 2014.

(v)   ONLY IF, on a motion for judgment on the pleadings, matters "outside" the pleadings are presented to and not excluded by the court, the motion can be treated and included as one for in a summary judgment and disposed of as provided in Rule 56, NOT when material made by allegations are disputed "by the testimonials of numerous witnesses and thousands of pages of exhibits" and NOT to simply allows a "Plaintiff" party to Move on a Motion for Summary Judgment, is a GENERAL disqualifying issue.

(vi) FURTHERMORE:

The standard used by the courts in "a" motion for summary Judgment is to review arguments, but NOT when the allegations are disputed, and there is evidence of material misrepresentation of facts, especially if it is moved on pleadings last date so close to the trail date.

See notes by the 9th Cir. Ruling is: *"Viewing the evidence in the light most **favorable to the non-moving party,** the district court correctly determine whether there are any genuine issues of material fact on the relevant substantive law." See:* Bamonte v. City of Mesa, *598 F.3d 1217, 1220 (9th Cir.2010)).*

Here the Plaintiff is a Government regulatory Agency and its representative who is seeking this "motion for summary judgment" as IF "certain privileges are reserved for Government representatives, whereas such privilege is simply NOT available when Government is Plaintiff.

*Please see; The committee notes that's Deliberative process privilege is simply unavailable to the government let alone an agency especially when it is the plaintiff in a case. See, e.g., EEOC v. Airborne Express, 1999 WL 124380, at *2 (E.D. Pa. 1999); Federal Deposit Ins. Corp. v. Hatziyannis, 180 F .R.D. 292,293-94 (D. Md. 1998) e.g.*

LIST OF DISPUTED **GROSS MISREPRESENTATIONS OF MATERIAL** FACTS BY PLAINTIFF'S REPRESENTATIVE:

*(a)* Based on the testimony of the Court Appointed Trustees Report, and testimonial of the General Bankruptcy Counsel an Officer of the Court (most honorable counsels in the community) **who are NO friends of the defendants**, and to the contrary had a fiduciary duty to discover misconducts, they <u>testified</u> that there was NEVER 80 customers, or claims, and to the contrary of the allegations there was ONLY "One" customer who filed a 523 claim under the "Plaintiff's Representative's pressure", and few others were satisfied by the gold coins R Nassbridges delivered via Trustee *(Please see The CD ROM Exhibits # 2 & # 3 Page 7 thru Page 321, & P.735, and exhibit "A" and "B")*

(b) Alleging fraud when never existed.

(c) Self-proclaimed Jurisdiction by Plaintiff. (See testimonies of expert)

(d) FIVE Separate testimonials by Reputable "Forensic Accountants, "two" of which were hired by the court appointed Trustees, "one hired by the insurance company and "two" by

the Bankruptcy General counsel. "ALL" "FIVE" witness unanimously "testified under penalty of perjury" and conquer that not only they found NO evidence of fraud, Profit by the Defendants, but also NO evidence of any payments to the individual defendant R Nassbridges or his Wife B Nassbridges ("the Relief-defendant").

(i)     The Witnesses explain that "Plaintiff's Representative" of references of transfers to the defendant that were made for payments made through R Nassbridges for purchasing Bullions "delivered" to the clients ["verified by the court appointed Trustee"] (*See registered mail delivery receipts docket # 95"*):

-   Payments to pay back LOANS obtained from Washington MUTUAL BANK for the operation of the ABEX Business, by him and his Wife (Please see Washington MUTUAL BANK loan statements wired to ABEX")

-   His Wife is named as Relief defendant because the personal account was a Husband and Wife joint account. *Please see The CD ROM Exhibits # 3, Page 53 through Page 321" Page 7 through Page 48, Exhibit "B"AFFIRMATION*

To satisfy the Court the "Defendant" hired one FINAL Forensic Accountant expert to "review" all these other "Five" reports and testimonials, who on March 26, 2014 filed his report with the Court, "concluding" that he has reviewed all these other testimonials and reports, enclosed: 890 pages of accounting ledgers, bank statements and testified that the entire allegations made by "Plaintiff's Representative" is baseless and total misrepresentation of material FACTS. *(Please see his testimony exhibit "B" & Docket # 249 for the materials he filed in support).*

(ii)    Testimonial by the Bankruptcy General Counsel testified that the "Court Appointed" Trustee had thoroughly investigated the estate of the defendants, or relief defendants and did NOT found evidence of "Pooling" of customer funds NON what so ever. *(Please see exhibit "A" & The CD ROM Exhibits Page 735")*

(iii)   "Plaintiff's Representative" has accumulated depositions or documents related to defendants "personal" transactions **pertaining to May 2005** that was created by defendant's at the time broker as Hedge account to protect defendants tangible assets of GOLD coins Stored at the HSBC Bank, are totally "misrepresentations of FACTS" and irrelevant to the issue at hand, to confuse and mislead the court.

**Furthermore,** "Plaintiff's counsel" to confuse and mislead the court and the expert witness, at his deposition day, presents these documents and asks him whether he has seen these or NOT, and or whether he is willing to change his opinion, that he has attached as a uncontroverted facts. *As an example:* plaintiff's is fully aware that due to the High blood Sugar medications side effects on defendant R Nassbridges memory that causes dyslexia, at times  does NOT remember an event to respond correctly, *yet accused the defendant of perjury!!*

- Because "a deposition transcript" may construe or interpret in many different ways, Federal Rules of Civil Procedures prohibits entry or reliance "Deposition transcripts as a whole" as basis or proof of uncontroverted facts in support of a claim for Judgment, and can only be read during the Trial, and have the witness explain exactly what he or she meant or how the questions were presented to him, or how was coerced out of them.

(iv)    Attached testimonies of Bankruptcy estate General Counsel, and "Five" prominent experts testimonials all "concluding" that the defendant was a victim of FRAUD perpetrated by the Plaintiff's own member by the name of MF Global Inc. *(see Exhibit "A","B", The CD ROM Exhibits #2 & #3, Page7- 48, Pages: 444, 498, 506, 735)*

(v)    Under Rule 56, as noted under 26(a)(1)(C) by the advisory committee such allegations must be supported by material facts NOT disputed at all.

(vi)    Furthermore The Court appointed Trustees accountant accompanied declaration testifying to have reconciled the "defendants" and "relief-defendants" Bank records and accounting ledgers (*The CD ROM Exhibits #3, Page 59 thru 321*) and to have concluded that no misappropriation by "NONE" of the defendants or relief defendants in this matter was found, which is a misrepresentation of material fact by movants, refuted the entire alleged monetary claim by the "Plaintiff's Representative" by these "Testimonials".

(vii)    Court appointed Trustees investigated and verified delivery records, and Signed receipts, and concluded that every customers of the defendants who had "paid" in full have received their ORDERS as promised. ("*The CD ROM Page 607 thru 733*")

(viii) This injunction for relief is to restrain defendants; in this matter counsel's representations of the case is entirely misrepresentation of facts. As the defendant have constantly said, **immediately as soon as that the "Defendant" operating capital** was stolen by MF Global Inc. the defendant R Nassbridges on his own Merit filed for chapter 11 to reorganize but was converted into chapter 7, and things was removed out of his control.

**e.g.** The defendant will prove at Trial that Defendant's RE Lloyd LLC was awarded a **multimillion dollar** agreement (Approved by TWO Governments) Law Enforcement that was agreed to be **entirely infused** into ABEX so its Trustee can fulfill ABEX's debts and further hire Counsel to pursue claims against MF Global Inc. **HARDLY INTENTIONS OF A FRAUD BY THE DEBTOR OR THE DEFENDANTS. (See exhibit "D") that was disrupted by the action of the cftc's counsel,** because worried "IF" the defendant succeeds to Pay Off ABEX's debts and pursues MF Global Inc. then Plaintiff's Counsel will look bad after all he has made everyone believe that the defendant R Nassbridges is a devil person.

(ix) Based on the evidence every aspect of this injunction contradicts the material facts.

(x) The issue is stuck on a single Bankruptcy Court that already adjudicated as a non-Dischargeable debt, on basis by the Doctrine of *"res-judicate"*, a duplicate judgment, as the basis to deny all other disputes of material facts of each allegations **(*See Exhibit* "B" Docket # 249 in support thereof.)** as unfair.

BY THE COURT'S ORDER on October 17, 2013, in this MATTER, "a" Judgment by Motion for Summary Judgment cannot be had, and this case should be decided by a Jury Trial.

"A" "Motion for Summary Judgment" is to be decided in its entirety or partially, **"IF"** material facts **are NOT** disputed by the "Testimonials" of witnesses (See exhibit "A" and "B" &The CD ROM Exhibits # 2& # 3 Page 7 thru Page 321, & P.735). *See Supreme Court e.g.* 9th *circuit See: Bamonte v. City of Mesa,* 598 F.3d 1217, *1220 (9th Cir.2010)).When evidence and material facts are present,* **a trial on mere allegations cannot be had:**

(a) When allegations disputed by material Facts.

(b) What alleged claim is proper or not, and or if is in-compliant with the LAW.

The testimonials attached hereto, previously presented to the court, are from Reputable Officers of the Court, and Members of CA BAR Associations, **with NO interest or bias toward the Plaintiff or favor of the defendant who have testified to the TRUTH,** and NOT based on the image drawn by the "Plaintiff's Representative".

FURTHERMORE; when on or about November of 2011 the defendants filed for "Motion for summary Judgment against the Plaintiff" despite of a whole year extensions granted for the plaintiff's counsel to respond still plaintiff failed to challenge defendant's "Statement of FACTS" (*please see the CD ROM Page 1 through page 4"*) and defendant's material facts in support of defendant's motion for summary Judgment, in timely manner.

See *the U.S. 9th Circuit Cites: then the plaintiff must meet that challenge. But even then, the extent of that burden depends on the stage of the proceeding. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) *("[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., ("with the manner and degree of evidence required at the successive stages of the litigation.") further* **9th Circuit Cites Plaintiff could "NO longer rest on such 'mere allegations,' but must 'set forth' by evidence, specific facts, and standing'** through Trial, and NOT a motion.

<u>SUMMARY OF DISPUTES</u>

(i) The alleged allegations cannot be decided on a late "motion for summary" Judgment whereas the court has already ruled that this case cannot be decided by a motion for summary Judgment and must decide by a Jury.

(ii) By conclusions of law and Fed.Rules.of.Civil.Procedure when disputes on material facts exist then it is a disqualifying factor of a Motion for Summary Judgment.

(iii) The "Plaintiff's Representative" heavily relies on a testimony of a disgruntled employee (Lund) who was impeached during the Bankruptcy process for perjury, with extensive criminal records and disregard for the Law, *e.g. Mr. Lund was terminated for concealing the fact that he was wanted by the Orange County District Attorneys Office for hit and run at the time applied to Work for ABEX and engaged in battery with his coworkers Mr. David Nguyen and Female Manager (Ms. Jeanette Morton) that should*

testify at TRIAL and NOT on a self-serving "telephonic deposition" **that** disregards the conclusions of TWO Appointed Court Trustees. And testimonial of the Office of the Court and Bankruptcy General Counsel whom collectively dispute all the allegations made here to by Plaintiff's Counsel. *(See exhibit "A" and "B" &The CD ROM Exhibits # 2& # 3 Page 7 thru Page 321, & P.735)*

- Because "a deposition transcript" may construe or interpret in many different ways, Federal Rules of Civil Procedures prohibits entry or reliance "Deposition transcripts as a whole" as basis or proof of uncontroverted facts in support of a claim for Judgment, and can only be read during the Trial, and have the witness explain exactly what he or she meant or how the questions were presented to him, or how was coerced out of them.

The "Motion" heavily relies on the Murray's non-dischargeable debt claim that the Bankrupt estate couldn't in 2010 defend, by collateral Estopple it is unlawful to use another process exhibits and materials "abuse of process" and to seek "duplicate" monetary Judgment on a *"res-judicate"* matter whereas a non-chargeable debt judgment already in place.

And instead, plaintiff's counsel points to an unsubstantiated, self-serving transcript of deposition contain protected speech, and material related to the defendants' corporate defendants; clients, and employees etc. that would be inadmissible in any dispositive proceeding and excluded or needs to disposed of in a Pre-Trial Conference under LR-16. Fed. R. Civ. Proc. 33(c) ("Answers to depositions may be used to the extent allowed by the Federal Rules of Evidence."); *Knudesen v. City of Tacoma*, 2008 WL 163667, *4 (W.D. Wash. 2008)

Not to say it influenced the facts that were misrepresented in the first place, the defendant through its court appointed trustees were prepared to deliver the "Order" during the Bankruptcy but the client informed the Defendants court appointed Trustee that they did NOT have funds and entered into a credit deal to try their luck playing the market. *See Exhibit "F" CD Page 607 thru 733*

The Plaintiff cannot simply seek "Motion for Summary Judgment" and argue its "assembled exhibits" and its allegations as uncontroverted facts as it is improper, whereas each

and every allegations was argued with supporting evidence by the testimonials of Officers of the courts who argue the allegations as **GROSS misrepresentations of facts.** Especially reliance on "*res-judicated*" matters that the plaintiff's counsel had orchestrated from behind.

(c)   The Plaintiff who was indeed the regulator over seeing MF Global Inc. completely disregarded the EVIDENCE that MF GLOBAL indeed disclosed that they are Selling physical GOLD BARS (both in writing and on Recorded line) and stole ABEX's/Defendants CASH by illegally transferring "defendant's" CASH into a "CLONE" ACCOUNT created by MF Global Inc. under the name of SAUGUTAUCK ENERGY LLC. which is a violation of security exchange act, and instead fixated on the defendant and claims that is Normal and it's all defendants fault. *(Exhibit "F" CD ROM Page 405 thru 410, P.444, and Trustee's report on Page 7 ->)*

(d)   The "Plaintiff's Representative" in his Motion is trying to mislead and confuse the court, by relying on self-serving telephonic depositions obtained from persons whom each have financial interest at stake by refusing to say what the counsel wanted them to say, **which is why a "Trial"** is needed so the defendants can have the opportunity to examine or cross-examine the witnesses "Live and Well" by appearing in person. *i.e. Please see Exhibit "F" CD ROM Page 341 thru 347*

- Because "a deposition transcript" may construe or interpret in many different ways, Federal Rules of Civil Procedures prohibits entry or reliance "Deposition transcripts as a whole" as basis or proof of uncontroverted facts in support of a claim for Judgment, and can only be read during the Trial, and have the witness explain exactly what he or she meant or how the questions were presented to him, or how was coerced out of them.

(d)   The EVIDENCE and material FACT "Testimonial of the Court appointed Trustee's final determination" is disputing the validity of the injunction by plaintiff's counsel, reported to the Court that ABEX/Defendant was a COIN Store, had delivered Gold, Silver, Palladium, Platinum from mid 2005 through March 2008, and **was NOT in the Business of Futures,** and whether was or was NOT misled by MF Global Inc because based on the evidence at hand it's a matter for a jury to decide at TRIAL, *See Exhibit "F" CD Page 607 thru 733, Pages 486, 487, 490, 493 & 506* thoroughly investigated by the court appointed Trustees for the defendants,

establishes that the defendant had successfully delivered every single other others but those "3" (three) remaining during the Bankruptcy.

There is NO argument that the Bankruptcy Judge on that one 523 claim granted a Judgment, and IF the court sees that the heart of the issue was that the bankruptcy court Judge stated that the defendant should have known what he is buying, but it's hard to explain what one person should have known or know. STILL THIS IS NOT EVIDENCE OF MALICIOUS FRAUD or misrepresentation for a debt to be deemed as non-discharge there is no other avenue for the courts; as such the definition and requirements in the bankruptcy courts are totally different than a common wealth court. Furthermore matter adjudicated cannot be basis for judgment is another proceeding.

> **The committee Judge commented:** *obtaining a 523 non-discharge is as easy as filing paperwork because almost 100% of the debtors do NOT have money to defend the claim, IF they had money they wouldn't file Bankruptcy in the first Place.*

For the Plaintiff's counsel to take that and using it alongside his Federal Government power to continue pursuit of the defendants ABEX/R NASSBRIDGES, is miscarriage of justice.

The uncontroverted fact is that a "motion of summary judgment" will deprive or prejudices a defendant, regardless what the allegations are.

DEFENDANT'S ARGUMENTS AND

MEMORANDUM OF POINTS IN SUPPORT THEREOF

TO THE LATTER OF THE LAW AS BASIC ELEMENT, Government pursuing a lawsuit in federal courts for ancillary damages and or civil penalties, an important area for the court is ensuring, early in the case, that the plaintiff discloses his or her damages calculation and produces related documentation. Rule 26(a)(1)(A)(iii), requires in pertinent part:

Such computation was never produced at the Party's Joint Status Conference on February 26, 2011, for the defendants' examination, and it was NOT produced till some document prepared in response to defendants "Motion for summary Judgment" was in November of 2012, filed by plaintiff's counsel, the testimonial and computation "prepared" by a CFTC own employee who

1  will write anything to "**appease its employee**", it is does NOT and never was qualified under Rule

2  26(a)(1)(A)(iii), furthermore, "FIVE" independent Forensic experts testimonials attached here and

3  docket including those appointed by the Trustee they all testify to the contrary of the CFTC "self-

4  serving" computation of monetary claims. From documents collected improperly by the CFTC

5  counsel:

6      Furthermore, the exhibits enclosed to "Plaintiff's" motion for summary Judgments, cannot be

7  authenticated because they were NOT obtained at proper time from proper "Agent for Service" or

8  custodian of the documents, many of these documents are forward of a forward of a forward and

9  some are even blank or unclear as exactly who, where, when, what was said!

10      *[A] party must, without waiving a discovery request, provide to the other parties:*
11      ...a computation of each category of damages claimed by the disclosing party-who must also make available
       for inspection or copying under Rule 34 the documents or other evidentiary material, unless privileged or
12      protected from disclosure, on which each computation is based, including materials bearing on the nature and
       extent of injuries suffered.

13      Where damages are calculable, the plaintiff is required to provide a reasonably specific computation of his
       damages. For example, Design Strategies, Inc. v. Davis, 367 F.Supp.2d 630, 633 (S.D.N.Y. 2005),
14      interpreted the requirement to produce initial damages disclosures in the context of the plaintiff's claims for
       money, where the plaintiff represented people suffered "particular monetary damage, in an amount ...
15      believed to be in excess of Twenty-five Million Dollars in lost revenues." The plaintiff did not provide "any
       specific computation of its alleged lost profits, nor any documents or other evidence on the basis of which
16      such a computation could be made." The court held that to be inadequate, and dismissed the claim.

17      Under Rule 37(a)(3)(A), Federal Rules of Civil Procedure, "[i]f a party fails to make a disclosure required by
       Rule 26(a), any other party may move to compel disclosure and for sanctions." Some courts have interpreted
18      the sanctions provision of the rule to allow preclusion of proving damages in the case. *See*, e.g., Gould Paper
       Corporation v. Madisen Corp., 614 F.Supp.2d 485, 490 (S.D.N.Y. 2009) (failure to "provide a damages
19      calculation" precluded party "from proving damages"); 24/7 Records, Inv. v. Sony Music Entm't, Inc., 566
       F.Supp.2d 305, 318 (S.D.N.Y. 2008) (theory of damages precluded because plaintiff failed to make
       mandatory initial disclosure).

20      Rule 26(a)(1)(A) also requires that where the plaintiff has documents that support his claim for damages,
21      those documents must be produced. The plaintiff must produce the non-privileged documents supporting the
       computation, including documents bearing on the nature and extent of injuries suffered. In Bessemer & Lake
22      Erie R.R. Co. v. Seaway Marine Transport, 596 F.3d 357, 369 (6th Cir. 2010), the Sixth Circuit Court of
       Appeals excluded a claim for money because all documents supporting the calculation were not disclosed.
23      The plaintiff failed to provide critical documentation to determine claim monetary demands.

24      Similarly, the Second Circuit in Design Strategy, Inc. v. Davis, 469 F.3d 284, 295 (2d Cir. 2006), explained
       that "[b]y its very terms Rule 26(a) requires more than providing-without any explanation-undifferentiated
       financial statements; it requires a 'computation' supported by documents."

25      The Advisory Committee Notes to Rule 26(a)(1)(C) accompanying its promulgation make clear that the rule
26      "imposes a burden of disclosure that includes the functional equivalent of a standing Request for Production
       under Rule 34. A party claiming damages or other monetary relief must, in additional to disclosing the
27      calculation of such damages, make available the supporting documents for inspection and copying as if a
       request for such material had been made under Rule 34." ...

28

DEFENDANT'S OPPOSITION TO PLAINTIFF'S          -14-   MOTION FOR SUMMARY JUDGMENT

Also See. U.S. District Court decision in *Holt Atherton Industries, Inc. v. Heine*, 835 S.W.2d 80 (Tex. 1992), See *Mee Indus. v. Dow Chem. Co.*, No. 08-16747, 2010 WL 2367119 (11th Cir. June 15, 2010),  as such the claim is baseless and dismissed.

Therefore the alleged ill-gotten gains, which is the entire purpose of counsel must be determined at "TRIAL" if or whether was or is in compliant with *Federal Rules of Civil Procedures pursuant to Rule 26(a)(1)(A)(iii), Rule 26(a)(1)(A) Under Rule 37(a)(3)(A), on the Federal Rules of Civil Procedure by the "Advisory Committee" that emphasizes to the essentials of the Law by Noting Rule 26(a)(1)(C)* United States Court, Circuit Courts and the Supreme Court have unanimously ruled that the government as a litigant is subject to rules *See: Mitchell v. Bass, 252 F.2d 513, 517 (8th Cir. 1958) (in as an official capacity, is in no different a position than any ordinary litigant, and is therefore bound by the Federal Rules of Civil Procedure in the same respects as an ordinary litigant).* **(See exhibit "B" & "F" CD ROM Page 57 thru 321)**

AS SUCH MATERIAL PUT TOGETHER BY PLAINITFF IS NOT A DEFINATIVE GROUND FOR A SUMMARY JUDGMENT AND ARE DISQUALIFYING FACTOR.

(II) To have this case decided on perjured testimony on basis of **OUT OF CONTEXT STATEMENT and HEARSAY** and not giving a chance to the defendant to face its accusers for cross examination is an improper request, especially when the "MOVANT" is the plaintiff**.**

(III)    The process cannot **"assume" base on unverified evidence or testimonies**;

See: United States Congress Resolution Act. *That defines a "Fungible" transaction as follows: In which one unit is completely interchangeable with another. As defined: there is no difference between one ounce of gold of a given quality and one ounce of gold of exactly the same quality. For example, an investor's shares of Xerox left in custody at a brokerage firm are freely mixed with other customers' Xerox shares. Likewise, stock options are freely interchangeable among investors, and wheat stored in a grain elevator is not specifically identified as to its ownership. Similarly, put and call futures contracts on the same commodity that expire on the same date are fungible since a contract to buy -- a call -- can offset, or neutralize, a futures contract to sell -- a put. Therefore Bullion dealers are NOT POOL operator and do NOT operate under the CFTC jurisdictions, nor are required to register in any category, particularly when one pays for a particular coin or bar.*

1    **Therefore a judgment by motion will DEPRIVE** the defendants of its rights to a fair Trial.

2    (III)   Defendants *argue* for TRANSACTING with a Registered FCM (MF Global Inc.) a

3    Coin & Bullion dealer or store in the United States does NOT become OBLIGATED to register as

4    an FCM, CPO, or in General Register as a member of any organization especially the CFTC for

5    any purpose. Plaintiff citing Title 7 is NOT authorized by "Congressional Law" under "United

6    States Commodity Regulation to gain jurisdiction on a COIN Dealer, Title-7 is for

7    **AGRICULTURE** *(See Exhibit "F" CD ROM Page 763)* Furthermore the defendant to the **BEST**

8    **of his ability** "verified with MF Global Inc" that ABEX is purchasing GOLD BARS for delivery

9    *(See Exhibit "F" CD ROM Page 486, 487, 490 thru 493)* this is an attempt to shoot the victim of

10   its own member *(See testimony of Judge Levine Exhibit "F" CD ROM Page 35 thru 4")*

11   The law applies to equally everyone **and therefore there is NO double standard**.

12   

13   (IV)    Defendants have *argue* that Plaintiff's Injunction" especially post defendant's

14   bankruptcy demise in this matter, is *barred*, by the Act of United States Congress "U.S.

15   H.R. Law amendments Act, 15 U.S.C. § 78cc(b) under the Law. Affirmed by the

16   United States 9th Circuit Court of Appeal, *In Re: 839 F.2d 1369 (1988) John William

17   DAVIS, Plaintiff-Appellant v. BIRR, WILSON, Case No. 87-1768.* The 9th circuit

18   emphasis the U.S. Act of 1934, 15 U.S.C. § 78j(b) *or [Similar Regulatory Acts,] are

19   that allege misrepresentation or fraud are subject to,* 1370*1370 Cal.Civ.Proc.Code §

     338(4). *Robuck v. Dean Witter & Co., Inc., 649 F.2d 641, 643 (9th Cir.1980).*

20   The Court's PRIOR DECISION promises that the defendants will get a chance to argue its

21   defenses *e.g. U.S. H.R. Law amendments Act, 15 U.S.C. § 78cc(b) the U.S. Act of 1934, 15 U.S.C.

22   § 78j(b)* through a "Trial" *"when" a Plaintiff is alleging misrepresentation or fraud are subject to,*

23   1370*1370 Cal.Civ.Proc.Code § 338(4). *Robuck v. Dean Witter & Co., Inc., 649 F.2d 641, 643

24   (9th Cir.1980).* A FAIR TRIAL, because *plaintiff's monetary claims are res-adjudicate case,

25   under Fed.Rule.Of.Civ.Pro. 19,* as prescribed by U.S. Act of 1934, 15 U.S.C. § 78j(b) *or [Similar

     Regulatory Acts,]*

26   **PLAINTIFF CITED** Title-7 AS **LEGAL PRECEDENCE FOR THIS ACTION TO**

27   **SEEKING MONETARY FINES IS INVALID CITED AUTHORITY** because it is for

28   **AGRICULTURE** NOT COIN DEALERS. *(See Exhibit "F" CD ROM Page 763)*

(V)    Plaintiff's Injunction for Relief Citing Section 6c(e) of CEA, 7 U.S.C. Sections 13a-1 (2006) and commission Regulations, 17 C.F.R. §1.1 et seq. (2007) et seq. (2008) for Civil Monetary and Ancillary penalties AN OVER REACH of United States Law and Regulations BECAUSE THE CITED CODE BY PLAINTIFF IS CODIFIED FOR "AGRICULTURE" and makes NO reference or grants no oversight on Bullion Companies or COIN dealers. *(See Exhibit "F" CD ROM Page 763)*

(VI)   The court's own Ruling on October 17, 2013 stated that It's for a Jury at TRIAL to decide whether Plaintiff's Injunction for Relief.

(VII)  This Action violated [U.S.H.R. 362], and it is for a Jury to decide, because H.R. 362 is broad and is designed by the congress to protect both debtors and creditors from becoming piecemeal in the process under 11 U.S.C. § 362, United States Bankruptcy Court under  11 U.S.C. § 362(a)(1), which mandates that any further actions needs ["relief "] within the time frame provided by the Court *See; Hillis Motors, Inc.. v. Hawaii Auto. Dealers' Ass'n, 997 F.2d 581,585 (9th Cir. 1993) (internal citations omitted); see also Computer Communications, Inc. v. Codex Corp. (In re Computer Communications, Inc.), 824 F.2d 725, 731 (9th Cir. 1987). ("Congress designed [§362] See 11 U.S.C. § 362(a)(1); Sansone v. Walsworth (In re Sansone), 99 B.R. 981 (Bankr. C.D. Cal. 1989).*

(VIII) Plaintiff's violated U.S. Bankruptcy Act. H.R. 362, under 11 U.S.C. § 362(a)(1), Section 1102(b)(3) when conducted discovery "the United States Supreme Court unanimous Ruling AFFIRMED that it is the Federal Rules of Civil Procedure, and not federal agency administrative regulations, that applies for this process. *See Mitchell v. Bass, 252 F.2d 513, 517 (8th Cir. 1958)* and therefore IT IS FOR A Jury to decide".

(IX)   Plaintiff's Injunction for Relief and action violated U.S. "discharge injunction" 11 U.S.C § 727 **that "Remains Forever"**, and 11 U.S.C § 524(a)(2), that "enjoins" the [Plaintiff] to ["Re-Adjudicate"] by the *"res judicate"* doctrine, **cannot**  seek remedies on the [same discharged debts] *See Matter of Edgeworth, M.D. (5th Cir. 1993) 993 F.2d 51, 53; also In re McGhan (9th Cir. 2002) 288 F.3d 1172, 1175.* A Jury should decide.

1   U.S. "discharge injunction" 11 U.S.C § 727 **Remains Forever",** and 11 U.S.C § 524(a)(2),

2   DOES APPLY TO THE DEFENDANTS.

3   DISCOVERY, DISCLOSURES LAWS, AND RULES WHEN GOVERNMENT IS PLAINTIFF:

4   *The U.S. courts and Supreme Court have unanimously ruled that the deliberative process*

5   ***privilege is simply unavailable to the government let alone an agency especially when it***

6   ***is the plaintiff in a case.*** *See, e.g., EEOC v. Airborne Express, 1999 WL 124380, at \*2*

    *(E.D. Pa. 1999); Federal Deposit Ins. Corp. v. Hatziyannis, 180 F .R.D. 292,293-94 (D.*

7   *Md. 1998)*

8   (X)   During the Bankruptcy proceeding commencement of the TRUSTEE taking over in

9         2008 the defendant was NO longer in control or in position of making any decisions as

10        such Plaintiff violated Fed. R. Civ. P. and failed to follow proper procedures as.

11        Wherefore the "Mambo" "Jumbo" exhibits accumulated and presented by Counsel in

12        support of his "motion" cannot be "Authenticated" or "Validated" till during the

13        TRIAL have these "exhibits or alleged evidence in support of the statement of facts

14        examined or identified by the Witnesses under OATH at "Trial".

15   (XI)   And instead, plaintiff points to an unsubstantiated, self-serving transcript of

16         deposition contain protected speech, and material related to the defendants' corporate

17         defendants; clients, and employees etc. that would be inadmissible in any dispositive

18         proceeding and excluded or needs to disposed of in a Pre-Trial Conference under LR-

19         16. Fed. R. Civ. Proc. 33(c) ("Answers to depositions may be used to the extent

20         allowed by the Federal Rules of Evidence."); *Knudesen v. City of Tacoma*, 2008 WL

           163667, \*4 (W.D. Wash. 2008).

21

22         And therefore IT IS FOR A Jury to decide".

23   See ruling; In Figurative or constructive searches by an "independent" regulatory Agency [a]

24   ("Commission") under its investigatory Subpoena power:

25        Certain searches and actions are NOT allowed during an investigatory [subpoena

26   power] given to an independent regulatory agency, [1] In the case of *Federal Trade*
     *Commission v. American Tobacco Co,*,[the federal court ruled that the FTC, while having

27   been granted a broad subpoena power, did NOT have the right to a general "fishing
     expedition" into the private papers, to search both relevant and irrelevant, hoping that

28   something would come up. ,[2] Justice Holmes ruled that this would *go against* "the spirit

and the letter" of the Fourth Amendment. In the 1946 case of *Oklahoma Press Pub. Co. v. Walling*,[3] there was a distinction made between a "figurative or constructive search" and an actual proceeding with a subpoena power, wherefore these searches are limited by the Fourth Amendment, where the Executives, owners, employees, all personal and personnel records (containing their medical records or overages) and in general; *are* entitled as privilege and to privacy and all the constitutional protections created in order to protect the rights of private individuals. See * *The U.S. Constitution. Founding Fathers.* Certainly doesn't relieve an independent regulatory agency from following rules and procedures.

## MEORANDUM OF POINTS IN OPPOSITION OF PLAINTIFF'S COUNSEL DISCLSURE

Defendant points to *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018 (9th Cir.), in support of its position that defendant's opposition to counsel's motion for summary judgment, and a fair Trial is the proper course of action.

9th Circuit courts of Appeal cited *Lierboe*, addressing where a named party was *found* to lack standing, because the ("defendant") hereto will prove its position at TRIAL *See Williams v. Boeing Co.*, 2005 WL 2921960, * 10 (W.D. Wash.2005). The Ninth Circuit Affirmed ("In *Lierboe*, the district court initially certified a class, but it was subsequently determined that the named party did not have a valid claim from the outset of the litigation.")

Plaintiff had over "Four" years and now on the last days approaching to the trial is trying to prove standing on a *motion for summary judgment*, where the Burden is on the Plaintiff to go through a Trial by Jury and NOT be rewarded by a Summary Judgment especially when there is absence of material fact *See e.g. Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transport, 596 F.3d 357, 369 (6th Cir. 2010),* Similarly, the Second Circuit in Design Strategy, Inc. v. Davis, 469 F.3d 284, 295 (2d Cir. 2006), explained that "[b]y its very terms Rule 26(a) requires more than providing-without any explanation-undifferentiated financial statements; it requires *See* The Advisory Committee Notes to Rule 26(a).

## CONCLUSIONS:

FAIR STANDARDS by the doctrine of "Justice for All" to the latter of law. It is impossible to disregard every material uncontroverted fact of gross misrepresentations made within this case, or to disregard the work When testimonies like Exhibit "A", "B" and Page 7 thru 321 on CD exist.

The defendant has been told by various counsels that he needs to understand that because of his place of birth, he is the new black in America, and will in a Government court with a Government Agency get NO where, **yet the defendant wishes NOT to believe them, as such:**

The defendant is respectfully requesting from the court to examine the evidence and **testimonials on exhibits, "A", "B", "C", "D", "E", exhibit "F" CD ROM** Page 18 (list of stolen CASH from the defendants) Page 53 through 321 (NO need to believe either sides about misappropriation of funds, it's all there black & white), CFTC Retiring Judge Testimony an declaration Page 35 through 41 & particularly P.37, Page 341 thru 347 credibility of the witness, Summary of FACT, Page 350 through 399, (Evidence that MF Global Inc committed FRAUD & CLONED defendant's account and was stealing its CASH"=405 thru 410"), Notice of discovery of NEW evidence= Page 456 through 481"), Defendant immediate action against MFG up on discovery of misrepresentations by MF Global, See Page 490 thru 493 **particularly top section of P.492,** then see "IF" Testimonial on Page 35, 36, 37 thru 41 is True or NOT, Page 53 – 89 WaMu LOAN Statements to determine whether loan payments thru defendants joint bank account with his spouse who co-signed for the loan for ABEX then thru 321, justifies the allegation of any gains, let alone ill-gotten gain against the defendants or Relief defendants, Page 607 thru 610, then thru 733 COIN Delivery receipts with serial numbers to customers is an uncontroverted FACT that the defendant business was honorable and was NOT in the business of FUTURES, particularly when the court reads the Transcript of recording Page 490 thru 493. Page 444. FINALLY the court will see that it was Plaintiff's own member that due to lack of oversight screwed 56,600 people including the defendants. **"IF" you decide to end this to save Tax Payers**, please take into consideration that for the last 7 years counsel or his HANDLER **who ruined my name,** people say that he thinks must entangle me in more debt because of reasons that I cannot get in details here have already "Adjudicated me", many times. **Please see Exhibit "E" a sample of 1000's of testimonial how reputable member of society think of the defendant. PLEASE DO NOT ENSLAVE** ME FURTHER in debt AT 50 FOR THE REST OF MY LIFE, just because counsel represents the federal government, *Exhibit "F" filed as a CDROM 773Pages*

I declare under the penalty of perjury of United States of America that the forgoing is true and correct.

Date _June 18, 2014_ _____    _s/ Ryan A. Nassbridges_

Ryan A. Nassbridges "In Pro Per" Individual Defendant

Date _06.18.14_ _____    _s/ Bita J. Nassbridges_

Bita J. Nassbridges "In Pro Per" Individual Relief Defendant

# EXHIBIT "A"

# EXHIBIT "A"



SHULMAN
HODGES &
BASTIAN LLP

Please respond to:
Irvine

February 21, 2014

James C. Bastian, Jr.
Brian L. Bloom
Mark Bradshaw
Lynda T. Bui
Franklin J. Contreras, Jr.
Melissa Davis Lowe
Heather B. Dillion
Kiara W. Gebhart
Ronald S. Hodges
Robert E. Huttenhoff
J. Ronald Ignatuk
John Mark Jennings
Rika M. Kido
Paul S. Ocampo
Ryan O'Dea
Gary A. Pemberton
Michael J. Petersen
Samuel J. Romero
Leonard M. Shulman

Of Counsel to the Firm
A. Lavar Taylor
Donald R. Kurtz
Gregory J. Anderson

To Whom It May Concern

Re:    U.S. Commodities and Futures Trade Commission CFTC v. Nassbridges
       Case No. SACV10-01876 DOC (RNBx)

This letter is to address certain allegations and evidence presented in connection with the above-referenced action. Apparently, one or more witnesses has provided testimony to the effect that the defendants in the above action engaged in a business model related to illegal investment pools or the pooling of investor money. I understand that some of these allegations and testimony may stem from discussions in which I participated related to the pooling of assets for purposes of a global settlement with some of defendant's customers. To put this in context, after various claims were asserted against the defendant in his bankruptcy proceeding, and based on my representation of the defendant as his bankruptcy counsel, I attempted to broker a global settlement with all creditors. In the course of those discussions, I proposed that proceeds of certain assets and various recoveries from potential litigation claims be "pooled" for the benefit of all creditors. This was merely to try to establish a fund from which all of defendant's creditors could share pro rata based on their claims. In no way was this related to any investment pool or anything else alleged by the plaintiffs to be illegal.

Further, based upon my interaction with the defendant's personal bankruptcy trustee and the trustee for his company, ABEX, there was never any discussion or suggestion that the defendant engaged in any investment pool. In fact, ABEX's bankruptcy trustee took steps to return gold coins to specific customers held for their account.

I am happy to provide any additional information on this subject.

Very truly yours,

SHULMAN HODGES & BASTIAN LLP

James C. Bastian, Jr.

JCB/pab

Z:\M-N\Nassbridges, Ryan\Ltr\CFTC Action letter.docx

8105 Irvine Center Drive, Suite 600, Irvine, CA 92618 • Tel: 949.340.3400 • Fax: 949.340.3403
3750 University Avenue, Suite 670, Riverside, CA 92501 • Tel: 951.275.9300 • Fax: 951.275.9303
www.shbllp.com

# SHULMAN HODGES & BASTIAN LLP

*Celebrating 20 Years of Service*

Please respond to:
Irvine

James C. Bastian, Jr.
Brian L. Bloom
Mark Bradshaw
Lynda T. Bui
Franklin J. Contreras, Jr.
Melissa Davis Lowe
Kiara W. Gebhart
Ronald S. Hodges
Robert E. Huttenhoff
J. Ronald Ignatuk
John Mark Jennings
Rika M. Kido
Paul S. Ocampo
Ryan O'Dea
Gary A. Pemberton
Michael J. Petersen
Samuel J. Romero
Leonard M. Shulman

Of Counsel to the Firm
A. Lavar Taylor
Donald R. Kurtz
Gregory J. Anderson

November 4, 2013

To Whom It May Concern

Re:   <u>In re Ryan Nassbridges</u>
      Case No. 8:08-bk-12510-TA

Dear Sir or Madam:

This office served as general bankruptcy counsel to Ryan Nassbridges in connection with his bankruptcy case, Case No. 8:08-bk-12510-TA and also assisted him as counsel in connection with certain adversary proceedings commenced in connection with his case.  In our capacity as counsel, during 2008 we provided numerous documents to Kevin Webb, counsel to the Commodities and Futures Trading Commission ("CFTC"), at his request or in response to discovery requests and/or subpoenas.  True and correct copies of correspondence initiated to Mr. Webb which accompanied our production of documents and things are attached hereto.

Further, at or around the same time these requests were responded to, we were informed and made aware of depositions conducted by Mr. Webb of Mr. Nassbridges and his wife Bita.  It is our understanding and belief that Mr. Nassbridges and his wife fully cooperated with Mr. Webb's discovery requests and that we readily provided information, documents and things that he requested on behalf of the CFTC and that our office had numerous telephone conferences and correspondence exchanges in an effort to address and resolve any and all concerns raised by Mr. Webb with respect to Mr. Nassbridges and his company, Abex.

In addition, in our capacity as Mr. Nassbridges' counsel we had extensive meetings and discussions with the trustee of Mr. Nassbridges' bankruptcy estate, Thomas Casey, and the trustee for Abex's bankruptcy estate, James Joseph.  During the trustees' administration of the estates, they conducted extensive investigations of the personal financial affairs of Mr. Nassbridges and the corporate financial affairs of Abex.  Following such investigations, neither trustee commenced any actions or alleged any facts regarding Mr. Nassbridges' or Abex's concealment or inappropriate transfer of assets and did not pursue any claims or lawsuits contesting or objecting to Mr. Nassbridges' discharge.

Further, only one customer of Abex filed a claim under section 523 of the Bankruptcy Code.  Several other customers received their coins and other gold holdings prior to

To Whom It May Concern
November 4, 2013
Page 2

Abex's bankruptcy filing or by distribution from Mr. Joseph as Abex's bankruptcy trustee.  Of the remaining customers, only six actually filed proofs of claim in the bankruptcy court.

I am happy to provide additional detail and information regarding any of the foregoing.

Very truly yours,

SHULMAN HODGES & BASTIAN LLP

James C. Bastian, Jr.

JCB/pab
Enclosures

Z:\M-N\Nassbridges, Ryan\Ltr\To Whom It May Concern 02.docx



## SHULMAN HODGES & BASTIAN LLP

Please respond to:
Foothill Ranch

James C. Bastian, Jr.
Mark Bradshaw
Lynda T. Bui
Franklin J. Contreras, Jr.
Melissa R. Davis
Kiara W. Gebhart
Evan W. Granowitz
Ronald S. Hodges
Robert E. Huttenhoff
J. Ronald Ignatuk
John Mark Jennings
Irena Leigh Norton
Paul S. Ocampo
Gary A. Pemberton
Michael J. Petersen
Aileen U. Rodriguez
Samuel J. Romero
John P. Schafer
Leonard M. Shulman

_____

Of Counsel to the Firm
Richard A. Marshack
A. Lavar Taylor
Donald R. Kurtz
Gregory J. Anderson

January 15, 2009

<u>Via Federal Express</u>

Kevin S. Webb
Senior Trial Attorney
Division of Enforcement
U.S. Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, D.C. 20581

Re:    <u>Ryan Nassbridges</u>

Dear Mr. Webb:

Enclosed with this correspondence please find a disk of the ABEX recordings that
you requested from Mr. Nassbridges.  Again, we advise you that we have not been
retained by Mr. Nassbridges in connection with this matter, and are merely
forwarding this disk at Mr. Nassbridges' request.

Very truly yours,

**SHULMAN HODGES & BASTIAN LLP**

J. Ronald Ignatuk

JRI:mgr
cc:    James C. Bastian, Jr. (i/o, via email)
        Ryan Nassbridges (via email)

G:\Wp\Cases\M-N\Nassbridges, Ryan\Ltr\Webb_002.docx
3884-000

26632 Towne Centre Drive, Suite 300, Foothill Ranch, CA 92610 • Tel: 949.340.3400 • Fax: 949.340.3000
3750 University Avenue, Suite 670, Riverside, CA 92501 • Tel: 951.275.9300 • Fax: 951.275.9303
www.shbllp.com



Please respond to:
Foothill Ranch

James C. Bastian, Jr.
Mark Bradshaw
Lynda T. Bui
Franklin J. Contreras, Jr.
Melissa R. Davis
Kiara W. Gebhart
Evan W. Granowitz
Ronald S. Hodges
Robert E. Huttenhoff
J. Ronald Ignatuk
John Mark Jennings
Irena Leigh Norton
Paul S. Ocampo
Gary A. Pemberton
Michael J. Petersen
Aileen U. Rodriguez
Samuel J. Romero
John P. Schafer
Leonard M. Shulman

———————

Of Counsel to the Firm
Richard A. Marshack
A. Lavar Taylor
Donald R. Kurtz
Gregory J. Anderson

December 19, 2008

<u>Via Federal Express</u>

Kevin S. Webb
Senior Trial Attorney
Division of Enforcement
U.S. Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, DC 20581

Re:    <u>Compliance with Subpoena Served upon Ryan Nassbridges</u>

Dear Mr. Webb:

Enclosed with this correspondence please find documents that were provided to us by Mr. Nassbridges for shipment to your office.  According to Mr. Nassbridges, the documents accompanying this correspondence, as well as the documents provided to you previously by Mr. Nassbridges, constitute the entirety of the documents in Mr. Nassbridges' possession, custody or control responsive to the subpoena served by your office.  Pursuant to our agreement, please copy the documents accompanying this letter and return the originals to our office via a method that will provide for tracking of these documents to insure their safe return.

Finally, this letter confirms that this firm does not represent Mr. Nassbridges in this matter.  Rather, this firm is merely facilitating providing documents to your office pursuant to the subpoena that you served on Mr. Nassbridges.

Very truly yours,

**SHULMAN** HODGES & BASTIAN LLP

J. Ronald Ignatuk
JRI:mgr
cc:    James C. Bastian, Jr. (i/o, via email)

G:\Wp\Cases\M-N\Nassbridges, Ryan\Ltr\Webb_001.docx
3884-000

26632 Towne Centre Drive, Suite 300, Foothill Ranch, CA 92610 • Tel: 949.340.3400 • Fax: 949.340.3000
3750 University Avenue, Suite 670, Riverside, CA 92501 • Tel: 951.275.9300 • Fax: 951.275.9303
www.shbllp.com

# EXHIBIT "B"

# EXHIBIT "B"

Case: 8:10cv1876   Doc: 249


Ryan A Nassbridges
30025 Alicia Parkway    PMB 219
Laguna Niguel, CA 92677


--------------------------------------------------------

MIME-Version:1.0   From:cacd_ecfmail@cacd.uscourts.gov   To:ecfnef@cacd.uscourts.gov   Bcc:
Message-Id:<17210482@cacd.uscourts.gov>Subject:Activity in Case 8:10-cv-01876-DOC-RNB US
Commodity Futures Trading Commission v. American Bullion Exchange Abex Corp et al Witness
Testimony Summaries Content-Type: text/html

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA

**Notice of Electronic Filing**
The following transaction was entered on 3/25/2014 at 9:38 AM PDT and filed on 3/21/2014

| | |
|---|---|
| **Case Name:** | US Commodity Futures Trading Commission v. American Bullion Exchange Abex Corp et al |
| **Case Number:** | 8:10-cv-01876-DOC-RNB (https://ecf.cacd.uscourts.gov/cgi-bin/DktRpt.pl?489295) |
| **Filer:** | |
| **Document Number:** | 249 (https://ecf.cacd.uscourts.gov/doc1/031118621188?caseid=489295&de_seq_num=734&magic_num=MAGIC) |

**Docket Text:**
**DEFENDANT'S FORENSIC ACCOUNTANT EXPERT TESTIMONY, filed by interested party, Kurt H. Stake. (dro)**

**8:10-cv-01876-DOC-RNB Notice has been electronically mailed to:**
James H Holl , III    jholl@cftc.gov
Kevin S Webb       kwebb@cftc.gov,   glowe@cftc.gov,   jholl@cftc.gov,   mbougas@cftc.gov, vmcgonagle@cftc.gov
**8:10-cv-01876-DOC-RNB Notice has been delivered by First Class U. S. Mail or by other means BY THE FILER to :**
Bita J Nassbridges
30025 Alicia Parkway PMB 219
Laguna Niguel, CA 92677
Ryan A Nassbridges
30025 Alicia Parkway PMB 219
Laguna Niguel, CA 92677

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**sa10cv1876doc-test.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=3/25/2014] [FileNumber=17210480-0
] [7640b3cd06dd8d7bcdc11b6d71caf58db65e7aacdc51b61aa64478965105b5f8be8
817546586610fa6b635608e1a0fcd74869c8edf4bd2bf991c2906e3efb48d]]

FILED

1   Kurt H. Stake, CPA, MBA, CFF, CFE, CMA
    SingerLewak LLP
2   2050 Main Street, 7th Floor
    Irvine, CA 92614-8259
3   T: 949-261-8600 ext. 1410

                                                    2014 MAR 21  PM 3: 54
4
                                                    CLERK U.S. DISTRICT COURT
5   F: 949-261-8610                                 CENTRAL DIST. OF CALIF.
    www.singerlewak.com                                    SANTA ANA
6   Email: kstake@singerlewak.com                   BY: _____

7

8                     UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                         SANTA ANA DIVISION

11

12                                            |  Case No.

13  U.S. Commodities and Futures Trade        |  SACV10-01876 DOC (RNBx)
    Commission CFTC                           |
14                                            |
              Plaintiff,                       |
15                                            |
    V.                                        |  DEFENDANT'S FORENSIC
16                                            |  ACCOUNTANT EXPERT
    RYAN NASSBRIDGES                          |  TESTIMONY
17  AMERICAN BULLION EXCHANGE                 |
    ABEX CORP.                                |
    AMERICAN BULLION EXCHANGE                 |
18  LLC.                                      |
                                              |
19           Defendant.                        |  EXHIBITS AND DECLERATIONS
                                              |  IN SUPPORT THEREOF
20  R.E.LLOYD COMMODITIES GROUP               |
    HOLDINGS LLC. AMERICAN                    |
21  PREFERRED COMMODITIES APC                 |
    CORP. BITA NASSBRIDGES                    |
22                                            |
           Relief-Defendants                   |
23  _____  |

24  Served on Plaintiff on March 14, 2014

25

26

27

28
    _____
    EXPERT REPORT OF KURT H. STAKE               -1-

## QUALIFICATIONS

I am a Senior Manager with the accounting firm SingerLewak. Prior to joining SingerLewak I held similar positions as a Senior Manager at Ernst and Young and RGL Forensics, a Director at PricewaterhouseCoopers and a Partner at Gladstein CPA LLC. I am a Certified Public Accountant, Certified Management Accountant, Certified Fraud Examiner and I am Certified in Financial Forensics by the American Institute of Certified Public Accountants. Since 1988 my practice has been focused exclusively on forensic accounting and analyzing commercial damages. I am an adjunct professor in the accounting department of Chapman University. I have been designated as an expert witness on forensic accounting and financial issues in both state and federal courts. I hold a Bachelor of Sciences degree in Accounting from the University of Southern California and a Masters in Business Administration from Chapman University. My Curriculum Vitae that summarizes my qualifications and examples of my prior engagements is attached to this report. My current hourly rate is $375 for analysis, deposition and trial testimony. I am paid a salary by SingerLewak and, therefore, received no direct compensation for this assignment. SingerLewak is paid on an hourly basis and has no financial interest in the outcome of this case.

## BACKGROUND AND SCOPE OF ASSIGNMENT

I have been engaged by Mr. Ryan Nassbridges to act as an expert witness in the case of U.S. Commodity Futures Trading Commission ("CFTC") v American Bullion Exchange Corp., American Bullion Exchange LLC and Ryan Nassbridges (collectively the "Defendants"). On December 10, 2010 the CFTC filed a complaint ("the complaint") against the Defendants. I have been asked to address certain allegations in the complaint as well as other items enumerated below. I have been asked to:

1. Review the November 4, 2013 and February 21, 2014 testimonial letters of attorney James C. Bastian the general bankruptcy counsel in Ryan Nassbridges' 2008 bankruptcy proceeding (Case No. 8:08-bk-12510-TA) and provide an opinion as to how the contents of the letters support or refute the allegations made in the complaint.

2. Review the August 20, 2007 expert report of Peter D. Wrobel and the documents relied upon by him and to provide an opinion as to the reasonableness of his conclusions.  Also, to provide an opinion as to how the results of his analysis corroborate or refute the allegations made in the complaint.

3. Review the December 20, 2011 expert report of Barbara C. Luna and the documents relied upon by her and to provide an opinion as to the reasonableness of her conclusions.  Also, to provide an opinion on how the results of her analysis corroborate or refute the allegations made in the complaint.

4. Provide an opinion as to the CFTC allegation that Defendants fraudulently operated a commodity pool.

5. Provide an opinion as to the CFTC allegation that the Defendants defrauded at least 80 individuals.

6. Provide an opinion as to the CFTC allegation that the defendants defrauded individuals of approximately $5,500,000.

7. Provide an opinion as to the CFTC allegation that Ryan Nassbridges, misappropriated customer funds.

8. Research the requirements for coin and bullion dealers to be registered with the CFTC.

9. Provide an opinion as to the CFTC allegation that the Defendants were operating a business model "Akin" to a Ponzi scheme.

## CONCLUSIONS

Based on my analysis of the information provided it is my opinion that the Defendants were not operating a commodity pool and did not defraud at least 80 individuals of $5,500,000.`  The Defendants, in my opinion, did not misappropriate or divert ABEX funds for personal use and were not operating a business model "Akin" to a Ponzi scheme.  The bankruptcy in 2008 of the ABEX companies did not occur as a result of Defendants' misappropriations or diversion of funds.

1  I understand the Defendants' have filed suit against MF Global Holdings, Inc. ("MF Global") a
2  major brokerage firm that filed Chapter 11 bankruptcy in 2011, alleging the fraudulent action of
3  MF Global directly resulted in the Defendants bankruptcy in 2008. That matter is not addressed in
4  this report.

5  My opinion expressed herein is preliminary in nature. If additional information is provided and
6  analyzed then my opinion may change.

7  **INFORMATION REVIEWED**

8
9  In conducting this analysis, I reviewed the following documents:

10  - The CFTC complaint against ABEX and other pleadings.

11
12  - The November 4, 2013 and February 21, 2014 testimonial letters of attorney James C.
13    Bastian the general bankruptcy counsel in Ryan Nassbridges' 2008 bankruptcy
     proceeding (Case No. 8:08-bk-12510-TA).

14
15  - The August 20, 2007 expert report of Peter D. Wrobel.

16  - The December 20, 2011 expert report of Dr. Barbara C. Luna.

17  - Documents in support of the Luna report: 2008 QuickBooks "Transaction Detail by
18    Account" and bank "Reconciliation Detail" reports, tax records, Balance Sheets, Profit
19    & Loss Statements, bank statements and other financial records of American Bullion
20    Exchange LLC, American Bullion Exchange Corporation, American Preferred
21    Commodities Corporation and R.E. Lloyd Commodities Group Holdings LLC ("R.E.
22    Lloyd").

23  - Documents in support of the Wrobel report: Bank statement and ledgers from June
24    2005 through April 2008, purchase and delivery reports, sales reports, inventory
25    reports and other relevant documents.

26  - Assorted correspondence and industry research.

27  - Other relevant financial and non-financial documents.

28

EXPERT REPORT OF KURT H. STAKE                    -4-

**REPORTS OF OTHERS**

***Testimonial Letters of Attorney James C. Bastian***

Two letters dated November 4, 2013 and February 21, 2014 were provided that were written by attorney James C. Bastian the general bankruptcy counsel in Ryan Nassbridges' 2008 bankruptcy proceeding.

The first letter dated November 4, 2013, references (i.e. "Re:" caption) the Ryan Nassbridges bankruptcy case (Case No. 8:08-bk-12510-TA). In this letter Mr. Bastian indicates that his office served as general bankruptcy counsel to Ryan Nassbridges in connection with his bankruptcy and also assisted Ryan Nassbridges as counsel in connection with certain adversary proceedings commenced in connection with his case. He also indicates that he had extensive meetings with the trustee of Ryan Nassbridges bankruptcy estate, Thomas Casey, and the trustee for ABEX's bankruptcy estate, James Joseph. In this letter Mr. Bastian states:

> *"During the trustees' administration of the estates, they conducted extensive investigations of the personal financial affairs of Mr. Nassbridges and the corporate financial affairs of Abex. Following such investigations, neither trustee commenced any actions or alleged any facts regarding Mr. Nassbridges' or Abex's concealment or inappropriate transfer of assets and did not pursue any claims or lawsuits contesting or objecting to Mr. Nassbridges' discharge."*

> *"Further, only one customer of Abex filed a claim under section 523 of the Bankruptcy Code. Several other customers received their coins and other gold holdings prior to Abex's bankruptcy filing or by distribution from Mr. Joseph as Abex's bankruptcy trustee. Of the remaining customers, only six actually filed proofs of claim in the bankruptcy court."*

James Bastion's second letter, dated February 21, 2014, references (i.e. "Re:" caption) U.S. Commodities and Futures Trade Commission CFTC (Case No. SACV10-01876 DOC (RNBx)). Mr. Bastian states that that the purpose of the letter is to address certain allegations presented in

connection with the action commenced by the CFTC.  The comments specifically address the
CFTC's allegation that the defendants "pooled" customer funds and/or were operating a
commodity pool. This letter states:

> *"Apparently, one or more witnesses has provided testimony* [during the CFTC
> investigation] *to the effect that the defendants in the above action engaged in a business
> model related to illegal investment pools or the pooling of investor money.  I understand
> that some of these allegations and testimony may stem from discussions in which I
> participated related to the pooling of assets for purposed of a global settlement with some
> of the defendant's customers.  To put this in context, after various claims were asserted
> against the defendant in his bankruptcy proceedings, and based on my representations of
> the defendant as his bankruptcy counsel, I attempted to broker a global settlement with all
> creditors.  In the course of those discussions, I proposed that proceeds of certain assets
> and various recoveries from potential litigation claims be "pooled" for the benefit of all
> creditors.  This was merely to try to establish a fund from which all of defendant's
> creditors could share pro rata based on their claims.  In no way was this related to any
> investment pool or anything else alleged by the plaintiffs to be illegal.  Further, based on
> my interaction with the defendant's personal bankruptcy trustee and the trustee for his
> company, ABEX, there was never any discussion or suggestion that the defendant engaged
> in any investment pool.  In fact, ABEX's bankruptcy trustee took steps to return gold coins
> to specific customers held for their account."*

### *August 10, 2007 Expert Report of Peter D. Wrobel*

Peter D. Wrobel was retained by American Bullion Exchange LLC, USA eChamber Corporation
and Ryan Nassbridges ("ABEX") to act as an expert witness in the matter of O.C. Superior Court
Case No. 07CC07074.  Mr. Wrobel was engaged to analyze certain transactions entered into by a
client with ABEX that the client alleged were fraudulent.  Mr. Wrobel's opinion was that the
transactions were not fraudulent and that the transactions were consistent with the practice of
purchasing semi-numismatic and numismatic gold coins.

1   Mr. Wrobel's report was an expert Declaration in Support of Defendants' Ex Parte Applications. I
2   understand that as a result of Mr. Wrobel's report ABEX's Ex Parte Applications was granted.

3   I reviewed the analysis and documentation provided in support of Mr. Wrobel's report and agree
4   with his findings.

5   ***December 20, 2011 Expert Report of Dr. Barbara C. Luna***
6
7   Dr. Luna was retained to review the 2008 financial records preceding the bankruptcy of American
8   Bullion Exchange, LLC, American Bullion Exchange Corporation, American Preferred
9   Commodities Corporation and R.E. Lloyd Commodities Group Holdings, LLC (collectively
10  'ABEX") to determine any payments the owner received from the entities, any loans the owner
11  made to the entities, and the net amount of funds the owner received from/lent to the entities.

12  Dr. Luna's analysis indicates Ryan Nassbridges was the sole owner of American Bullion
13  Exchange, LLC, American Bullion Exchange Corporation, American Preferred Commodities
14  Corporation and R.E. Lloyd Commodities Group Holdings, LLC (collectively "ABEX"). Her
15  findings indicated an initial capital contribution was made by Mr. Nassbridges in 2006 of
16  $990,000. The capital loan balance due Mr. Nassbridges in 2008 preceding the bankruptcy was
17  $1,461,460. Her analysis of payments made to Ryan Nassbridges was limited to 2008. Dr. Luna
18  determined that disbursements in 2008 to Mr. Nassbridges were limited to $40,000. She also
19  noted and additional disbursement of $1,500 to his wife B Nassbridges. Ryan Nassbridges has
20  indicated the $40,000 was paid to him to reimburse business expenses.

21  Dr. Luna also summarized wire transfers to MF Global from ABEX and Ryan Nassbridges and
22  noted total wires of $1,643,000 from November 2007 through January 2008. She noted this was
23  based on limited information and may be understated. She also summarized loses reported to
24  ABEX by MF Global on federal tax form 1099-Bs for the same period which totaled ($1,328,142).
25  This analysis was also, apparently based on limited documentation and may be understated. I
26  noted the wire transfers to MF Global are proportionate to the losses sustained by ABEX. In Dr.
27
28

EXPERT REPORT OF KURT H. STAKE                    -7-

Luna's report she does not appear to directly address the Defendants' allegations that the bankruptcy of ABEX occurred as a result of MF Global's actions.

I reviewed the Dr. Luna's analysis and the supporting documentation provided and agree with her findings.

## OPINIONS

### *CFTC allegation that Defendants fraudulently operated a commodity pool*

Based on my analysis it is my opinion that the Defendants were not operating a commodity pool.

The CFTC[1] definition of a commodity pool includes the notion of investing "pooled" funds of multiple participants for the purpose of "trading commodity futures or option contracts." This is not consistent with the Defendants business model and operations.

*Analysis - James Bastian Testimonial*

The statements by attorney James Bastian in his November 4, 2013 letter directly refute the CFTC clam that the Defendants operated a commodity pool.

> "...I proposed that proceeds of certain assets and various recoveries from potential litigation claims be "pooled" for the benefit of all creditors. This was merely to try to establish a fund from which all of defendant's creditors could share pro rata based on their claims. In no way was this related to any investment pool or anything else alleged by the plaintiffs to be illegal."

Based on the above, and other, statements in Mr. Bastian's letter the complaint appears to misinterpret the difference between "trading commodity futures or option contracts" and the

---

[1] The CFTC glossary defines a "commodity pool" as: An investment trust, syndicate, or similar form of enterprise operated for the purpose of trading commodity futures or option contracts. Typically thought of as an enterprise engaged in the business of investing the collective or "pooled" funds of multiple participants in trading commodity futures or options, where participants share in profits and losses on a pro rata basis.

1    pooling of assets in a bankruptcy proceeding for the purpose of a global settlement with the

2    claimants to the bankruptcy estate.

3    *Analysis - Peter Wrobel Report*

4    Mr. Wrobel's report was submitted over three years prior to the complaint in which the allegations

5    of a commodity pool were first introduced by the CFTC.  Also, Mr. Wrobel's report was written in

6    relation to a different matter not in response, or as a rebuttal to, the allegations in the complaint.

7    Mr. Wrobel's report includes the following comments related to the Defendants' business model:

8

9          *"When a client makes a purchase request through an ABEX representative, they are*

10         *informed that it may not be completed immediately as it depends on the availability of the*

11         *coins on the open market.  ABEX has two options in order to fulfill the purchase request.*

12         *The first is to purchase the requested coins on the spot market.  Any profit that ABEX*

13         *could gain on the spot market purchase would be derived from any markup that ABEX*

14         *applies to the purchase price.  This option is relatively unfeasible since a prospective*

15         *buyer could purchase the same coin at the spot market price, circumventing ABEX's*

16         *markup.  The second option is to exercise a call option to purchase the coins.  In order to*

17         *facilitate this process, ABEX maintains a portfolio of call options on various types and*

18         *grades of bullion/coins at different prices.  Depending on a client's request, ABEX will 1)*

19         *determine the current spot market price for that specific type and grade of bullion/coin, 2)*

20         *review the call options for bullion/coins of that type and grade, and 3) exercise the call*

21         *option if the option price is below the market price.*

22   The description above is not consistent with the CFTC definition of a commodity pool.  The

23   complaint appears to misinterpret the difference between an entity "trading commodity futures or

24   option contracts" and ABEX's two "options" to fulfill customer purchase requests. The complaint

25   also appears to misinterpret the difference between "trading commodity futures or option

26   contracts" and ABEX maintaining its own portfolio of call options to purchase coins and bullion

27   which could be exercised by ABEX as needed when the option price was below the spot market

28   price.

*Analysis - Other*

Amounts used by Mr. Wrobel in his analysis were tied to corroborating source documents. These documents included, but were not limited to, bank statement and ledgers from June 2005 through April 2008, purchase and delivery reports, sales reports, inventory reports and other relevant documents. The documentation reviewed demonstrated purchases, sales and inventory reports of specific units of physical product (e.g. "32 oz. Kilo Bar gold bullion," "American Buffalo MS to oz. coin"). Trading statement demonstrating sales of futures, options or securities were not found.

### *CFTC allegation that Defendants defrauded at least 80 individuals*

Based on my analysis the Defendants did not defraud at least 80 individuals.

No expert report or analysis has been provided by the plaintiff to document how the quantity of individuals allegedly defrauded was established. Also, the information reviewed indicates the Defendants did not have a history of defrauding customers and at the time of the bankruptcy minimal claims were filed against the bankruptcy estates of the Defendants.

*Analysis - James Bastian Testimonial*

The statements by attorney James Bastian in his November 4, 2013 letter directly refutes the CFTC clam that the Defendant defrauded at least 80 customers. This is reflected in the number of complaints actually filed by customers against the Defendants. Based on Mr. Bastian's statement only 1 customer of ABEX filed a claim under section 523 (Exception to Discharge) of the Bankruptcy code, other customers received their coins and bullions back, and only 6 others filed proofs of claim in the bankruptcy court.

> "....only one customer of Abex filed a claim under section 523 of the Bankruptcy Code. Several other customers received their coins and other gold holdings prior to Abex's bankruptcy filing or by distribution from Mr. Joseph as Abex's bankruptcy trustee. Of the remaining customers, only six actually filed proofs of claim in the bankruptcy court."

*Analysis – Peter Wrobel Report*

In Mr. Wrobel's report he analyzed certain transactions between the plaintiff and the Defendants and found the transactions were not fraudulent and that the transactions were consistent with industry practices. Mr. Wrobel's report was an expert Declaration in Support of Defendants' Ex Parte Applications.   I understand the as a result of Mr. Wrobel's report ABEX's Ex Parte Applications was granted.  This documents that the action against the Defendants was unfounded and directly refutes the allegations that the Defendant had any history of fraudulent activity.

*Analysis – Other*

I reviewed court pleadings that document that approximately 5 of the claims filed against the bankruptcy estate of Ryan Nassbridges were fraudulently filed by an attorney without the knowledge of the individuals named as claimants.  When the individuals became aware of the fraudulent filings they filed suit to have the claims made under their names against the bankruptcy estate dismissed.

***CFTC allegations Defendants defrauded individuals of approximately $5,500,000***

No expert report has been received quantifying or corroborating any alleged damages. Furthermore the information reviewed indicates no valid legal complaints have been filed against the defendants that alleged or claim damages.

***CFTC allegation that Ryan Nassbridges misappropriated customer funds***

No expert report has been received quantifying or corroborating this claim.

The complaint alleges that Ryan Nassbridges misappropriated customer funds for personal purposes and diverted funds to himself and third parties.  The allegation is repeated in multiple areas of the claim stating inconsistent amounts for the alleged misappropriations and inconsistent uses of the alleged misappropriated funds.  There is no concise summary of the value of the alleged misappropriations.

*Analysis - James Bastian Testimonial*

This allegation is not consistent with Mr. Bastian's statements in his November 4, 2013 letter in which he indicated that during the trustees' administration of Ryan Nassbridges' and ABEX's bankruptcy estates, extensive investigations of the personal financial affairs of Mr. Nassbridges and the corporate financial affairs of ABEX were performed. Following such investigations, neither trustee commenced any actions or alleged any facts regarding Mr. Nassbridges' or ABEX concealment or inappropriate transfer of assets. Mr. Bastian's statements on the issue include:

> *"During the trustees' administration of the estates, they conducted extensive investigations of the personal financial affairs of Mr. Nassbridges and the corporate financial affairs of Abex. Following such investigations, neither trustee commenced any actions or alleged any facts regarding Mr. Nassbridges' or Abex's concealment or inappropriate transfer of assets and did not pursue any claims or lawsuits contesting or objecting to Mr. Nassbridges' discharge."*

*Analysis – Dr. Barbara Luna*

Dr. Barbara Luna's analysis indicates in the period of her review Mr. Nassbridges took minimal distributions from the Defendant companies. Her analysis found only $40,000 in disbursements by Ryan Nassbridges we she understood to be for reimbursement of business expenses. A $1,500 payment to B Nassbridges was also located that was taken from the "Loans from Partner account of R.E. Lloyd Commodities Group Holdings, LLC.

Dr. Luna's report includes the following statements with regard to disbursements from the Defendant companies:

> *"The 2008 financial records preceding the bankruptcy for American Bullion Exchange, LLC do not show any payments made to Ryan A. Nassbridges or to his wife, B Nassbridges from American Bullion Exchange, LLC."*

*"The 2008 financial records preceding the bankruptcy for American Bullion Exchange
Corporation do not show any payments made to Ryan A. Nassbridges or to his wife, B
Nassbridges from American Bullion Exchange Corporation."*

*"The 2008 financial records preceding the bankruptcy for American Preferred
Commodities Corporation do not show any payments made to Ryan A. Nassbridges or to
his wife, B Nassbridges from American Preferred Commodities Corporation"*

*"The 2008 financial records preceding the bankruptcy for R.E. Lloyd Commodities Group
Holdings, LLC show a $40,000 payment made to Ryan A. Nassbridges, which allegedly
was used as a reimbursement for company expenses, and a $1,500 payment from the Loans
from Partner account to his wife, B Nassbridges."*

### *Requirement for coin and bullion dealers to be registered with the CFTC*

The complaint alleges that the Defendant companies were acting as commodity pool operators and
failed to register with the CFTC (paragraph 10).

Based on my analysis, as discussed in detail above, the defendants were not operating a
commodity pool but what I understand to be a coin and bullion dealer.   I researched the
requirements for the registration of a coin and bullion dealer and it appears such an entity is not
required to register with the CFTC.

*Analysis – Peter Wrobel Report*

With regard to the business model of the Defendants' being a coin and bullion operator, Mr.
Wrobel describes ABEX as:

*"a company that specializes in the purchase and sale of gold, silver, platinum and palladium
coins and bullion."*

I note that Mr. Wrobel's report was submitted over three years prior to the complaint and in
relation to a different matter not in response, or as a rebuttal to, the allegations in the complaint.

1  *Analysis - Other*

2  It is beyond the scope of my expertise and the scope of this report to provide an opinion as to the

3  legal requirements that coin and bullion dealers are required to be registered with the CFTC.

4  However, it is my understanding from my industry research that, because coin and bullion dealers

5  are not dealing in financial assets and are not in the "money services business"[2] they are not

6  required to be registered with the CFTC.  This finding was based on discussions with the Industry

7  Council For Tangible Assets ("ICTA")[3], discussions with the legal counsel for a major precious

8  metal dealer, discussions with a CPA for a coin and bullion dealer, and discussions with owners of

9  coin and bullion dealers.

10  **_Defendants were operating a business model "Akin" to a Ponzi scheme_**

11  With regard to the definition of a Ponzi scheme the CFTC Glossary states:

12

13  *"the term has been used to describe pyramid arrangements whereby an enterprise makes*

14  *payments to investors from the proceeds of a later investment rather than from profits of the*

15  *underlying business venture, as the investors expected, and gives investors the impression that a*

16  *legitimate profit-making business or investment opportunity exists, where in fact it is a mere*

17  *fiction."*

18

19  _____

20  [2] The United States Department of the Treasury Financial Crimes Enforcement

21  Network defines a "money services business" as any person doing business, whether or
not on a regular basis or as an organized business concern, in one or more of the

22  following capacities: (1) currency dealer or exchanger, (2) check casher (3) issuer of
traveler's checks, money orders or stored value (4) seller or redeemer of traveler's

23  checks, money orders or stored value (5) money transmitter (6) U.S. Postal Service.

24         The CFTC Glossary does not appear to include a definition for "money services

25  business."

26         [3] ICTA website defines the organization as: the national trade association for all

27  who have an interest in precious metals, rare coins, US and foreign currency, and other
numismatic and tangible assets.

28

No expert report has been provided that provides an analysis or corroboration to support this allegation.

Furthermore, the Defendants had customers that purchased and sold coins and bullion. The Defendants, in my opinion, did not have investors or participants whose funds were "pooled" for the purpose of "trading commodity futures or option contracts." Therefore, in my opinion the Defendants business model was in no way "Akin" to a Ponzi scheme.

Executed this 14th day of March 2014 at Irvine, California

Kurt H. Stake, CPA, CFE, CMA, CFF

///

EXHIBIT



www.SingerLewak.com

Los Angeles

Orange County

Woodland Hills

Monterey Park

Inland Empire

San Diego

Silicon Valley

# KURT H. STAKE, CPA, MBA, CMA, CFE, CFF

# CURRICULUM VITAE

## Professional Experience

Kurt H. Stake is a member of the Litigation and Valuation Services group of SingerLewak LLP. Mr. Stake has over 20 years of forensic accounting, damages, and litigation consulting experience. He has directed forensic investigations and litigation assignments throughout the United States, Australia, New Zealand, Asia and Mexico. Mr. Stake has calculated lost profits, business income losses and damages due to fraud schemes, partnership/corporate disputes, breach of contract, theft of trade secrets, employee dishonesty, personal injury and wrongful termination. He has been involved in cases involving business valuation, marital dissolution, inventory and property losses, valuation for estate and gift tax purposes and individual net worth analysis. Mr. Stake has investigated failed financial institutions on behalf of the FDIC and analyzed bank fraud schemes and damages related to foreclosure of real estate developments.

## Education

Bachelor of Science, Accounting, University of Southern California

Masters of Business Administration, Chapman University

## Professional History

| | |
|---|---|
| 2011- Present | SingerLewak, LLP, Los Angeles & Orange County – Senior Manager |
| Present | Adjunct Professor Chapman University, Argyros School of Business |
| 2006-2010 | RGL Forensics, Orange County – Senior Manager |
| 2002-2006 | Gladstein CPA, Los Angeles – Partner |
| 2001-2002 | Ernst & Young, Los Angeles – Senior Manager |
| 1998-2001 | PricewaterhouseCoopers, Los Angeles - Director |
| 1988-1998 | RGL/Campos & Stratis, Los Angeles & Sydney, Australia – Manager |
| 1986-1988 | Arthur Andersen, Orange County – Senior Associate |

## Teaching & Continuing Education Lectures

Mr. Stake is an adjunct professor at Chapman University's Argyros School of Business and Economics. Mr. Stake has presented at UCLA, the California State Bar Association Education Institute, Chapman University School of Law, national AICPA seminars, local CSCPA seminars and local and national RIMS conferences. He has also provided training on fraud analysis and forensic accounting in the United States, Australia and Canada.

2050 Main Street, 7th Floor    Irvine, CA 92614   T: 949.261.8600   F: 949.261.8610
877.754.4557



## CURRICULUM VITAE (Continued)

### Testifying Experience

Mr. Stake has testified as an expert witness in California State and Family Court and has been designated as an expert witness in Federal Court on behalf of both plaintiffs and defendants.

### Professional Certifications

Certified Public Accountant

Certified Fraud Examiner

Certified Management Accountant

Certified in Financial Forensics



**Examples of Engagements**

**Litigation**

- *Petroleum* – Analysis of financial damages and loss of value incurred by a petroleum refinery inspection services firm following the alleged theft of trade secrets and employees by the United States largest oil and gas company.

- *Net Worth* – Represented the world's largest toy manufacture in a royalty dispute to determine net worth of a former product designer and methods used to lower personal net worth via transfers of funds and property to other individuals and businesses.

- *Real Estate Developer Bankruptcy* – Analysis of solvency and financial position of commercial real estate developer including sources and uses of funds and appropriateness of disbursements to vendors and third-parties in the years prior to bankruptcy filing.

- *Action Sports* – Analysis of financial damages to action sports equipment and clothing manufacture as a result of alleged improper shipping and distribution of product to customers throughout North America by the largest package delivery company in the world.

- *Mortgage Industry* – Represented the United States largest mortgage bank in establishing damages suffered as a result of the alleged theft of confidential information and recruitment of employees restricted by non-compete agreements by one of the banks top brokers.

- *Environmental/Water District* – Analysis of clean-up and remediation costs on behalf of a Southern California county water district following the alleged groundwater contamination by multiple companies.

- *Third Party Logistics* – Acted as expert witness in trade secret litigation related to financial damages suffered by a third party logistics firm following the alleged theft of a customer list by one of the largest ground freight providers in the world.

- *Misappropriation of Funds and Property* – Calculation of damages resulting from multiple international fraud schemes perpetrated by the controller of a major upscale clothing manufacture.

- *Construction* – Analysis of allegedly inappropriate project costs and the quantification of profit due to multiple partners involved in the development of residential and commercial real estate projects.

- *Non-Compete Agreement* – Calculation of annual lost profit and valuation of a "piece" of a freight management company (i.e. a book of client business) taken to a competitor by an employee allegedly restricted by a non-compete agreement.

- *Class Action Fraudulent Investment* – Determined settlement due to each member of a class of investors that suffered damages as a result of a fraudulent investment program.

- *Municipalities* – Analysis of lost profit claims filed against the Los Angeles department of public works relating to improperly awarded construction contracts.

- *Mediation/Construction Defect* – Acted as an expert in mediations regarding lost earnings and property damage suffered as a result of construction defects at a health club.

- *Art Exhibition* – Calculation of lost royalties, merchandise revenue and increased costs incurred by an art exhibition following alleged wrongdoings of an art museum.

- *Livestock* – Calculated damages sustained by cattle ranchers which resulted from the use of contaminated cotton trash as fodder in a season when normal cattle feed was not available in Australia.

- *Accountant's Liability* – Analysis of CPA/real estate developer's financial records to determine if professional liability insurance had been purchased by the CPA in anticipation of future lawsuits related to past professional malpractice.

- *Rendering* - Computation of lost profits and property damage at a major rendering plant following a fire that caused a partial closure of the company's facility.

## Valuation

- *Financial Reporting* – Valuation for financial reporting purposes of all worldwide entities held by major manufacturer and distributor of computers and peripherals.

- *Estate & Gift Tax* – Valuation of estates for individuals owning closely held businesses, stock portfolios and commercial and residential real estate.

- *Financial Instruments* – Valuations of a promissory note for the purpose of establishing, for tax purposes, the value of a gift of a portion of the note to a family member upon the death of the note payee.

- *Small Business* - Valuation of small business in family law and partnership disputes.

- *Valuation of Real Estate LLPs* – Calculation of discounts for minority interest and lack of marketability to be applied to real estate appraisals for industrial, commercial and residential real estate held by family limited partnerships and limited liability corporations.

- *Entertainment* – Valuations of a film and "webtoon" development company for the purpose of estimating a market price for potential investors.

## FDIC/Banking

- *FDIC/Failed Financial Institutions* – Served as a consultant for the Federal Deposit Insurance Corporation assisting counsel with investigating potential Director's and Officer's liability claims and verification and validation duties



**Fidelity/Investigation**

- *Universities/Education* – Investigation of misappropriation of University funds by the CFO for the purpose of purchasing computer equipment, ATMs and consulting services from organizations owned by the CFO.

- *Misappropriation of Company Resources* – Investigation of multiple international fraud schemes perpetrated by the controller and assistant controller of a large high fashion garment manufacture.

- *Medical Partnership Dispute* – Investigation of misappropriations of funds and partnership resources by a partner and acting CEO of a network of medical practices.

- *Cosmetics* – Analysis of lost inventory due to employee theft at multiple facilities of a major cosmetic manufacture.

- *Import/Export* – Analysis of lost commissions resulting from a kickback scheme between an employee of a merchandise importer and a customs broker.

- *Construction* – Analysis of inappropriate fund transfers by partner in Southern California water park development firm from bank accounts identified for a specific construction project to personal accounts and accounts of other construction projects.

- *Dairy Industry* – Computation of financial damages sustained by the New Zealand Dairy Board as a result of the board's officer's allowing the amount of butter imported into both the United Kingdom and Europe to exceed the annual allowable quota as well as allowing the product imported to exceed the allowable butter-fat content.

- *Mining* – Quantification of inventory loss due to employee theft at a gold mine in Western Australia.

- *Glass Fabrication* – Investigation of company financial and bank records to determine time-frame that theft of cash occurred at the hand of the corporate controller. Also quantification of amount lost for purpose of insurance submission.

- *Garment Industry* – Investigation of misappropriation of company funds and calculation of lost company earnings as a result of employee kickback schemes.

- *Audit of Expert Fees* – Analysis of hours invoiced and billing rates for attorneys, accountants, and engineers. Also review of contractor/subcontractor invoices for time and material charges.

**Insurance & Subrogation - Business Interruption/Inventory Loss/Extra Expense**

- *Banking* – Calculation of business interruption loss for a major bank following water intrusion at a branch in Northern California.

- *Subrogation* – Calculated lost rents and property damage loss for a commercial center at a major Orange County marina damaged by fire for the purposes of subrogation involving multiple

insurance carriers.  Also calculated lost profits, property damage and personal property loss for marina tenants.

- *High Rise Office Building* – Calculation of property damage and loss of rents for a high-rise office tower in downtown Los Angeles following a catastrophic fire.

- *University* – Analysis of property damage, increased labor costs and extra expenses incurred at a University of California hospital, livestock facility and research departments as a result of wildfires in San Diego County.

- *Mining* – Calculation of lost profits and increased costs following a smelter explosion at a major nickel mine and losses resulting from a boiler failure at aluminum mine both in Kalgorlie, Western Australia.

- *Pharmaceutical* - Quantification of overhead, product and research and development costs associated with lost batches of a Kogenate at a pharmaceutical manufacturing facility in Berkeley, California.

- *Environmental* – Analysis and summarization of expenses, including costs related to soil remediation and re-trafficking of foot/bike paths.

- *Computer/Microchip Manufacturing* – Calculation of contingent business interruption loss sustained by a major computer manufacturer following a fire at a microchip manufacture in Asia that provided components.

- *Churches & Commercial Real Estate* – Assisted in the organization and compilation of damages related to the repair of the sixteenth century Trinity Cathedral and St. Paul's Chapel in downtown New York City following September 11, 2001.  This included soil remediation and the cleaning of pipe organs, stained glass and a graveyard.  Also, calculation of lost rents, business interruptions and extra expenses for the company's commercial real estate properties, school, grant programs and television and video ministries.

- *Oil Spill* – Multi-year tax return analysis to determine income losses for 30,000 fishermen, boat owners and spotter pilots relating to the Exxon Valdez oil spill in Alaska.

- *Cement Manufacturing* – Calculation of the cost to replace lost clinker following the collapse of the kiln burner pipe at a cement mill.

- *Hospitals* – Quantification of business interruption property damage and extra expenses following and electrical explosion caused by a failed transformer.

- *Municipalities* – Calculation of business interruption, increased labor costs, property damage and extra expenses incurred by a municipality as a result of wildfires in San Diego County.

- *Trade Show & Convention Center* – Calculation of business interruption and extra expenses related to closure of a trade show at Salt Lake City's Salt Palace following a tornado.



- *Hotels & Casinos* – Computed lost room revenues, lost casino and restaurant income, property damage and extra expenses at a major hotel and casino in Las Vegas.

- *Motels* – Computed lost room revenues, restaurant income, property damage and extra expenses suffered as a result of power surges at large motels in Palm Springs and fires at motels in San Diego County.

- *Food Manufacturing* – Calculation of lost profits and increased costs for New Zealand's second largest bread manufacturer whose main baking facility located in Auckland was destroyed by fire.

- *Aerospace* – Calculated property damage and business interruption loss for a small airline operator and maintenance operation in Las Vegas after a portion of it facility and hanger were destroyed by high winds.

- *Entertainment* – Prepared accounting of property damage for helicopter-mounted camera used in the filming of "Far & Away".  The camera was destroyed when the low flying helicopter fell from the sky into rough seas.

- *Rendering* - Computation of business interruption and property damage at a major Los Angeles rendering plant that occurred following the breakdown of a centrifuge and other essential operational equipment.

- *Seafood* - Calculation of an out-of-sight inventory loss following the "mysterious disappearance" of twenty shipping truckloads of tuna fish between a warehouse in Chicago and a warehouse in San Diego.

- *Sprinkler Manufacturing* – Quantification of increased costs and the cost of tenant improvements at a Tucson, Arizona manufacturing plant for one of the largest sprinkler manufacturers in the world after the roof of the plant was torn off by high winds.

- *Garment Industry* - Computation of in-sight and out-of-sight inventory losses suffered as a result of flood, fire and smoke damage for numerous clothing manufacturers.

- *Toys* – Quantification of extra expenses and inventory losses, which occurred as a result of civil unrest and fires at American manufacturing plants located in Jakarta and Taiwan.  Also, computation of an in-sight inventory loss that occurred as a result of a warehouse sprinkler system flood in Los Angeles.

- *Modeling Agency* – Computation, for the purpose of appraisal, of business interruption, property damage and extra expense losses for a major modeling agency following a fire at its studio.

- *Auto Parts* – Calculation of in-sight inventory loss at a major American automobile parts manufacturer's maquilladora in Mexicali, Mexico, which had been destroyed by a fire.

- *Auto Dealerships* – Quantification of business interruption loss at a San Diego Toyota dealership that suffered a major fire.

- *Health Club* – Computation of lost earnings at a health club, suffered as a result of a flood.



- *Restaurant* – Computation of business interruption extra expenses and property damage following a fire at a high end Los Angeles restaurant.

- *Riot & Earthquake* – Performed extensive loss calculations for businesses, restaurants, retail operations, check cashing facilities, etc. relating to the Los Angeles riots and Northridge earthquake.

- *Supermarket* – Quantification of property damage in-sight inventory loss and business interruption at a chain of supermarkets as a result of civil unrest, fire and vandalism following the L.A. riots.

- *Loss of Rents* – Calculated numerous loss of rent claims for apartment buildings, office complexes and condominium communities, which were incurred as a result of seismic damage following the Northridge Earthquake, fires and water intrusion.

- *Microchip Fabrication* – Quantification of an in-sight inventory loss following a flood caused by a burst water pipe at a microchip fabrication facility.

- *Professional Service Providers* – Quantified lost earnings for numerous medical, dental, psychiatric, legal and accounting practices.

- *Diatomaceous Earth* – Computation of lost earnings at a diatomaceous earth-processing plant.

## Family Law

- *Marital Balance Sheet* – Compilation of marital balance sheets including family owned business, cash and stock investments, real property, personal property and debt.

- *Spousal and Child Support Modification* – Calculation of business and personal cash flow used to determine if a modification of spousal and or child support is appropriate due to an improvement or decrease in a spouses earnings.

- *Inappropriate Transfer/Use of Community Property* – Tracing of funds transferred to personal or unknown bank accounts and uses of community funds and property by one spouse following the date of separation with the alleged intent to limit funds and property available to other spouse.

- *Child Support Payment Audit* – Multiple year analysis of direct cash and credit card payments, wage garnishments and tax refund interceptions to establish if payments for child support credited to a parent by the state of California were accurate.

## Lost Earnings/Employment

- *Wrongful Death* – Computation, on behalf of employer and manufacturer, of lost earnings for individuals that contracted mesothelioma by working with building materials containing asbestos.

- *Wrongful Termination* – Computation of lost earnings for accounting executive allegedly fired based on age discrimination.



- *Harassment* – Calculation of lost earnings and perquisites for the headmaster of one of Orange County, California's most prestigious private schools fired after alleging sexual harassment.

- *Auto/Truck/Cycling Accidents* – Calculation of lost earnings of individuals injured or killed in automobile and cycling accidents.

- *Government Contractor* – Calculation of lost earnings of government contractor suffered as a result of injuries that occurred in the workplace.

- *Personal Injury* – Calculation of lost earnings related to personal injury claims.

## Product Recall

- *Baked Goods* – Quantification of recall costs, cost to replace recalled product, loss of profits, and increased costs of working in a major product recall caused by an extortion attempt in Australia.

- *Pharmaceutical* – Calculation of product recall costs, cost to replace recalled product loss of profits, and increased costs of working at a Los Angeles plasma refractory following two FDA shutdowns.



1

**PROOF OF SERVICE**

2

3  STATE OF CALIFORNIA        )
                             )
4  COUNTY OF ORANGE           )

5          1.      I am self-employed and resident in the State of California

6          2.      I am over the age of eighteen (18) and am not a party to the action; my BUSINESS

7  ADDRESS:, SingerLewak LLP 2050 Main Street, 7th Floor, Irvine, CA 92614-8259

8          3.      On November 04, 2013, I, Kurt H. Stake SUBMITTING DEFENDANTS forensic
   accountant's expert report by placing a copy of said document in a sealed envelope with postage
9  prepaid, in the United States mail in Irvine, California, addressed as follows:

10 U.S. CFTC
   C/O Mr. Kevin S. Webb
11 Senior Trial Counsel
   1155 21st Street NW
12 La Fayette Centre
   Washington, DC 20581
13

14         I declare under penalty of perjury of the laws of the State of California that the foregoing is
15 true and correct.

16         Executed at Irvine, California this 14th day of March, 2014.

17

18

19

20

21         Kurt H. Stake

22

23

24

25

26

27

28

EXPERT REPORT OF KURT H. STAKE                    -16-

CFTC V ABEX et.

Case # SACV10-01876 D

Forensic EXPERT

-PPORTIVE DO

EXHIBIT ON CD

# EXHIBIT "C"

# EXHIBIT "C"

# United States of America



## DEPARTMENT OF STATE

### *To all to whom these presents shall come, Greetings:*

I Certify That the document hereunto annexed is under the Seal of the District of Columbia, and that such Seal is entitled to full faith and credit.*

*\*For the contents of the annexed document, the Department assumes no responsibility*
*This certificate is not valid if it is removed or altered in any way whatsoever*



Embassy of the
United Arab Emirates
Washington
Consular Section

421271

Date: JUN 0 2 2010

We certify stamp and signature of
U.S. Department of State
Not responsible for the content
CONSUL

In testimony whereof, I, Hillary Rodham Clinton, Secretary of State , have hereunto caused the seal of the Department of State to be affixed and my name subscribed by the Assistant Authentication Officer, of the said Department, at the city of Washington, in the District of Columbia, this first day of June, 2010.

_____
Secretary of State

By _____
Assistant Authentication Officer,
Department of State

*Issued pursuant to CHXIV, State of Sept. 15. 1789, 1 Stat. 68-69; 22 USC 2657; 22USC 2651e; 5 USC 301; 28 USC 1733 et. seq.; 8 USC 1443(f); RULE 44 Federal Rules of Civil Procedure.*



| 473 West 910 South |
| Heber City, Utah 84032 |
| 1-435-657-9529 (O) |
| 1-435-657-9686 (F) |

August 26, 2010

To whom it may concern:

With this letter, we, TigerLight, Inc., hereby assures that at no time will TigerLight, Inc. terminate R.E. Lloyd Group Holdings, LLC's Exclusive Agreement for the said territories in our letter dated August 25, 2010 , as long as R.E. Lloyd Group Holdings, LLC or its subsidiaries perform and meet the agreed sales targets.

For and on behalf of
TigerLight Inc.

_____
Michael H. Teig, President/CEO

ON THE 27 DAY OF Aug 2010 PERSONALLY APPEARED BEFORE ME Michael Teig SIGNER(S) OF THE ABOVE INSTRUMENT, WHO DULY ACKNOWLEDGED TO ME THAT HE/SHE/THEY EXECUTED THE SAME.

_____
Notary Public

Residing at: Heber Ut

DEBRA MONTGOMERY
Notary Public
State of Utah
My Commission Expires 10/30/2012
COMMISSION # 576442



**DEPARTMENT OF THE AIR FORCE**
USAF NONNUCLEAR MUNITIONS SAFETY BOARD
EGLIN AIR FORCE BASE, FLORIDA 32542-6838

26 May 2004

MEMORANDUM FOR: HQ AFSFC/SFO
        1517 Billy Mitchell Blvd
        Lackland AFB, TX 78236-0119

FROM: AAC/SES
    1001 N. Second Street, Suite 366
    Eglin AFB, FL 32542-6838

SUBJECT: Amendment to USAF Nonnuclear Munitions Safety Board Executive Secretary
     Certification for Operational Use of the TigerLight Flashlight Non-Lethal Defense
     System

 1. This letter provides clarification regarding TigerLight, which was previously approved
  for operational use via Executive Secretary Letter on 14 April 2004, log number 04-4-14.

 2. Analysis of the TigerLight was specific to two particular pepper spray canisters produced
  by Guardian Protective Devices:

   a. The Guardian Pepper Spray – Fog
   b. The Guardian Pepper Spray – Stream

  Accordingly, only the two Guardian Protective Devices canisters are approved for use in
  TigerLight under the previous certification.

                    PRESTON L. PARKER
                    Executive Secretary
                    USAF Nonnuclear Munitions
                    Safety Board



**R.E. LLOYD**
**Group Holdings LLC.**

<u>PROFORMA</u>
<u>INVOICE</u>

# 1 of 50 shipments

Number of
Pages: 1 of 2

| <u>From:</u> | R.E. Lloyd Group, LLC.<br>16150 Scientific<br>Irvine, CA 92618,USA | | <u>Order #</u><br>UAE4-21-10-RAK | | <u>Date</u><br>June-12-2010 |
|---|---|---|---|---|---|

| <u>USA Phone:</u> | +1-949-842-4442 | <u>FAX:</u> | 1-949-486-3377 | <u>P.O. Number</u><br>RAK-        001 | <u>Delivery</u><br>To RAK, UAE |
|---|---|---|---|---|---|
| <u>Dubai Mobile</u> | +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-7-83 | | | | |

| <u>To:</u> | **BUYER INFORMATION**<br>Al-Shoula Holdings<br>PO Box 76126<br>Ryadh, 11922-KSA | | <u>Ship To:</u> SAME | | AS BUYER |
|---|---|---|---|---|---|

| <u>Attn:</u> | H.E. Yousef S. Al Mehaisan | <u>Attn:</u> | SAME | AS BUYER |
|---|---|---|---|---|
| <u>KSA Phone:</u> | +966-50-544-6924 | <u>Tel:</u> | SAME | AS BUYER |

| <u>ITEM</u> | <u>Description</u> | <u>Quantity</u> | <u>Unit<br>Price</u> | <u>Total</u> |
|---|---|---|---|---|
| T100-V0160 | FALCONLIGHT<br>Each kit includes:<br>One T100<br>One (1) A/C 100-240V charger (VDE Plug)<br>Three Lithium Ion Rechargeable Battery<br>One (1) Operating and Safety Procedure Booklet/DVD | 3000 | USD<br>$218.75 | $656,250.00 |
| T100-0184 | C 2 Accessory Kit<br>Each kit includes:<br>1 Holster, 1 Hand strap | 1000 | Incl. | No Charge |
| T100-0184 | Loaded with  Stream OC Canisters-.2oz Pepper Trng | 1000 | No<br>Charge | No Charge |
| TERMS | **Payment Terms<br>& CONDITIONS** | NEXT | PAGE | Page 1 of 2 |

# EXHIBIT "D"

# EXHIBIT "D"



473 West 910 South
Heber City, Utah 84032
1-435-657-9529 (O)
1-435-657-9686 (F)

October 29, 2010

To whom it may concern:

I have had the pleasure of working with Ryan A. Nassbridges of R.E. Lloyd Group Holdings for the past several months and have found him to be a man of integrity, who has obviously earned the trust of those he deals with.

He has been exceptionally diligent in all matters pertaining to our transactions. Given that we had not done business with Mr. Nassbridges previously and it involved a fairly large shipment to a foreign country that we have not had prior dealings with, we were extremely cautious. Our many questions, including well over 300 emails in the past couple months between us, and what may have seemed to border on paranoia, did not offend Mr. Nassbridges. He continued to be very responsive and provide the information we requested.

I am also aware that Mr. Nassbridges had the opportunity to sell two other products to the customer, one of which would likely have earned him a far greater financial reward. However, when he became aware of potential risks associated with the product, he canceled the transaction and opted for an alternative based on the manufacturer's claims. However, prior to completing that transaction he was made aware of the TigerLight®, a product extensively tested by the US military and proven superior in a major study conducted at Los Angeles County Sheriff's Department, one of the most highly respected testing arenas for non-lethal weapons.

At the risk of frustrating both buyer and seller and delaying the sale further, he did what he felt was in the best interest of the ultimate customer (buyer), and elected to provide the TigerLight® to the customer. Although many companies and individuals have come to TigerLight, Inc. over the past ten years claiming to be able to sell the product Internationally, none have been as successful as Ryan A. Nassbridges and R.E. Lloyd Group Holdings. Mr. Nassbridges kept on top of things until TigerLight, Inc. received payment as promised.

I highly recommend R.E. Lloyd Group Holdings and Mr. Ryan A. Nassbridges as a trustworthy and diligent export distributor.

Sincerely,

Michael H. Teig
President/CEO
TigerLight, Inc.



**UNITED STATES DEPARTMENT OF COMMERCE**
**International Trade Administration**
U.S. Commercial Service
Sandy, UT 84070

To Whom It May Concern:                                              August 31, 2011

My name is Nathan Seifert and I am a U.S. Foreign Commercial Service Officer, temporarily based in our Utah export office. I recently visited the Tiger Light corporate office and warehouse based in Heber, Utah – represented in GCC Countries by Ryan N Bridges of Lloyd International Export services.

I am impressed with the company's commitment to provide high-quality, non-lethal methods of self defense. Their products have features and a spray deployment strategy that set them apart from the competition – if I found myself in need of a non-lethal form of defense, this would be my choice.

Based on positive results and statistics gathered from law enforcement agencies in the U.S., this product is what every law enforcement officer should be armed with as they seek to control crowds, subdue offenders and maintain their own safety.

Based on my research and site visit, this company has the product, in-region distribution, corporate support and management to be a reliable long-term supplier of a high-quality product.

Regards,

Nathan Seifert, Commercial Officer
Utah Export Assistance Center
Nathan.Seifert@trade.gov
Tel: 801-255-1872  Fax: 801-255-3147
http://www.buyusa.gov/utah
U.S. Department of Commerce | International Trade Administration | U.S. Commercial Service

NITED STATES DEPARTMENT OF COMMERCE
ternational Trade Administration
S. Commercial Service
90 S. 300 W.
ndy, UT 84070

RE Lloyd LLC
30025 Alicia PKWY Suite 219
Laguna Niguel , CA 92677

# EXHIBIT "E"

# EXHIBIT "E"

# OPERATING AGREEMENT OF
## AMERICAN BULLION EXCHANGE, LLC,
### A California Limited Liability Company, DBA ABEX

In accordance with the Beverly-Killea Limited Liability Company Act and subject to the Articles of Organization, which were filed on July 3, 2006 with the Secretary of State of California, the members of AMERICAN BULLION EXCHANGE listed on the signature page, make the following agreement effective July 3, 2006, regarding the conduct of the business and affairs of AMERICAN BULLION EXCHANGE a California Limited Liability Company ("Company"):

## ARTICLE 1.  DEFINITION OF TERMS

1.01.  When used in this agreement, the following terms have the meanings set forth here:
(a)    "Act" means California's Beverly-Killea Limited Liability Company Act, as set forth in Corporations Code Title 2.5.

(b)    "Agreement" means this operating agreement, as originally executed and as amended from time to time.

(c)    "Articles" means the Articles of Organization for the Company filed under Corporations Code Section 17050, including all amendments thereto or restatements thereof.

(d)    "Available cash" of the Company means all cash funds of the Company on hand from time to time (other than cash funds obtained as contributions to the capital of the Company by the members and cash funds obtained from loans to the Company), after (1) payment of all operating expenses of the Company as of such time, (2) payment, pursuant to Article 19.02, of amounts sufficient to enable the members to fund their federal and state income tax liabilities attributable to their respective allocable shares of the taxable income of the Company. In determining the appropriate amount, the Company shall use the highest tax bracket of the respective Members, (3) provision for payment of all outstanding and unpaid current obligations of the Company as of such time, and (4) provision for a working capital reserve. For any calendar quarter, available cash need not be distributed to the extent that the cash is required for a reasonable working capital reserve for the Company; the amount of the reasonable working capital reserve is to be determined by the Manager.

(e)    "Bankrupt" or "bankruptcy" means, with respect to any person, being the subject of any order for relief under Title 11 of the United States Code, or any successor statute.

of the Company.

**Reliance on Authority of Person Signing Agreement**

24.11.  In the event that a Member is not a natural person, neither the Company nor any Member will (1) be required to determine the authority of the individual signing this agreement to make any commitment or undertaking on behalf of the entity or to determine any fact or circumstance bearing on the existence of the authority of the individual, or (2) be required to see to the application or distribution of proceeds paid or credited to individuals signing this Agreement on behalf of the entity.

**Advise of Counsel**

24.12.  Each member and party to this Agreement warrants and represents that in executing this Agreement, he or she has relied upon legal advice from the attorney of his or her choice; that the terms of this Agreement have been read and its consequences have been completely explained to him or her by that attorney; and that he or she fully understands the terms of this Agreement. Any member or party to this Agreement who has not relied upon independent legal advise represents that he or she has had an opportunity to do so but has waived said right.

IN WITNESS WHEREOF, the undersigned have executed this Agreement, to be effective as of the date of the Articles of Organization of the Company are accepted for filing by the Secretary of State.

Dated August 04, 2006

AMERICAN BULLION EXCHANGE

By: _____ 08/04/06
RYAN NASSBRIDGES, Managing Member

By: _____ 08/04/06
SHAWN HAUSER, Member

By: _____ 08/04/06
Member
SHAWN COURTNEY HAUSER

## EXHIBIT A

| <u>Member's Name</u> | <u>Contribution</u> | <u>Percentage Interest</u> |
|---|---|---|
| Ryan Nassbridges<br>731 E. Ball Rd.<br>Anaheim, CA 92805 | Cash in the amount of<br>$ *350,000.00* . | 51% |
| Shawn Hauser<br>731 E. Ball Rd.<br>Anaheim, CA 92805 | Member agrees to contribute the sum of $350,000.00 in cash by 11/30/06. Should the total amount, above referenced, remain unsatisfied, as of 11/30/06, Member's current ownership of 49% will, as of that date, be diluted proportionately to reflect his actual contribution, e.g., should the actual amount contributed be $175,000.00 instead of $350,000.00, Member's ownership interest will be diluted to 24.5% (.245). Should Member, for any reason, be unable to satisfy any of the contribution, above specified, his minimum ownership interest in the Company shall be 10%. | 49% |

*Ryan A. Nassbridges* 08/04/06

*Shawn Hauser* 08/04/06

# EXHIBIT "F"

CFTC V. ABEX et al

SACV-10-01876 DOC

Defendants Oppostion
against Plantiff MSJ
07/14/2014
EXHIBIT CD 773
Pages

# EXHIBIT "F"

# **PROOF OF SERVICE**

STATE OF CALIFORNIA        )
                           )
COUNTY OF ORANGE           )

    1.     I am self-employed and resident in the State of California

    2.     I am over the age of eighteen (18) and am not a party to the action; my HOME ADDRESS: 30025 Alicia Parkway Suite 219, Laguna Niguel, CA 92677

    3.     On June 10, 2014, I, Ryan Nassbridges SUBMITTING DEFENDANTS OPPOSITION AND RESPONSE to plaintiff's motion for summary Judgment status report proceeding, filed by CFTC by placing a copy of said document in a sealed envelope with postage prepaid, in the United States mail in Irvine, California, addressed as follows:

U.S. CFTC
C/O Mr. Kevin S. Webb Senior Trial Counsel
1155 21st Street NW
La Fayette Centre
Washington, DC 20581

    I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

    Executed at Laguna Niguel, California this 11th day of JUNE 2014.

                                               Ryan Nassbridges In "Pro Se"